Gregorio **FIGUEROA RUIZ**, Petitioner, Appellant,

v.

Gerardo **DELGADO**, Warden, Respondent, Appellee.

No. 6627.

United States Court of Appeals First Circuit.

Heard Feb. 8, 1966.

Decided April 28, 1966.

tioner was convicted of two misdemeanors in a District Court of the Commonwealth of Puerto Rico, hereinafter District Court, and sentenced to jail. He did not appeal to the Superior Court, but he did raise the question of the illegality of the District Court procedure—the question he presently advances before us—by appropriate proceedings in the Supreme Court of Puerto Rico, and was turned down.[1] No question arises as to the proper exhaustion of his local remedies. The United States District Court for the District of Puerto Rico denied his petition, essentially on the basis of People v. Cayetano Barranco, fn. 1, supra, and he appeals.

Petitioner's claim is this. The Commonwealth of Puerto Rico furnishes no prosecutors in the District Court. The procedure is regulated by statute.[2] Although the statute is not in all respects clear, it is agreed that the Commonwealth's witnesses take the stand at the request of the trial judge, and are interrogated by him. They are then cross-examined by counsel for the defendant. Redirect, limited to what was brought out on cross, is conducted by the judge. Thereafter, if the defendant has witnesses, or chooses to take the stand, the examination in chief is conducted by his counsel. Cross-examination is conducted by the judge,[3] and redirect by defendant's counsel. The judge can call prosecution witnesses for the purpose of re-

Herbert O. Reid, Washington, D. C., and Santos P. Amadeo, Rio Piedras, P. R., with whom Richard Ramos Algarin, Santurce, P. R., Luis F. Camacho, Cayey, P. R., and Santiago C. Soler Favale Guayama, P. R., were on brief, for appellant.

Hector R. Orlandi Gomez, Assistant Solicitor Gen., with whom J. B. Fernandez Badillo, Solicitor Gen., was on brief, for appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

ALDRICH, Chief Judge.

This petition for habeas corpus raises some very troublesome questions. Peti-

---

1. The court's definitive opinion on this matter is not in petitioner's case, but People v. Cayetano Barranco, CE–63–31, decided June 24. 1965, not yet officially reported in English.

2. "Trial

"After having heard the charge, if the defendant plead 'not guilty' the justice shall proceed as follows:

"First. He shall examine under oath the witnesses for the prosecution. The oath shall be as follows: 'You do solemnly swear before Almighty God that you will tell the truth and nothing but the truth in the matter now pending before me.'

"Second. He shall examine under oath the witnesses for the defendant, including the defendant himself if he wishes to testify; if the defendant does not testify that fact can not be used against him.

"Third. Witnesses for the prosecution may be called to rebut any testimony given by the defendant or his witnesses and for no other purpose." Code Crim. Proc. of 1935, § 29. (The remainder of the section was inapplicable to petitioner, who was tried after the passage of section 19 of the Act of July 24, 1952, No. 11, 4 L.P.R.A. § 122.)

3. While the statute labels the judge's interrogation only "examination," it is obviously cross-examination in that its purpose is to clarify and expand the testimony on direct and, where appropriate, to discredit and impeach.

buttal. Thereafter, there being no jury, the judge decides the case. An appeal lies to the Superior Court, limited to correcting any unfairness or error apparent on the face of the record.[4]

Petitioner does not contend that any such apparent unfairness occurred in his case, but alleges that the whole procedure is inherently unfair and incompatible with the concept of due process of law. Bluntly, petitioner's position is that a District Court judge's intention to act impartially is necessarily impeded by his acting, in part, as prosecutor. The Commonwealth's position is equally blunt, that the District Court judge does not act as prosecutor.[5] This latter we find hard to accept.

■ Speaking from long contact with many trial judges, we appreciate that the public spirited and thoroughly impartial judge does not want innocent men to be convicted. Nor, however, does he want the guilty to go free. If a defendant has counsel, and particularly if he has effective counsel, and the people have none, it would be a rare judge who did not, at least unconsciously, seek to set the balance. While he may not be the ardent, striving, advocate that the Commonwealth's brief envisages as a public prosecutor,[6] if he has to see that justice is done for the people's cause, he must, to some extent at least, act as prosecutor.

Under the procedure in the Puerto Rico District Court the judge must alternate roles in rapid succession, or even assume both at once. Thus, when interrogating a witness he is examining for the people, but when listening to the answer to the question he has propounded, he is weighing it as judge, and at the same time considering what question, as prosecutor, to ask next. Correspondingly, when he listens to the answer to a question put by the defense, he must, as judge, impartially evaluate the answer, but, simultaneously, as prosecutor, he must prepare the next question for cross-examination. The mental attitudes of the judge and prosecutor are at considerable variance. To keep these two personalities entirely distinct seems an almost impossible burden for even the most dedicated and fairminded of men.

■ Respondent's attempt to equate the District Court practice with the right of questioning afforded a federal trial judge falls far short of the mark. The federal judge replaces neither the prosecutor nor counsel for the defense, but, at most, supplements both. Appellate courts have not been reluctant to criticize his overparticipation, e. g., Groce v. Seder, 3 Cir., 1959, 267 F.2d 352, 355; Martucci v. Brooklyn Children's Aid Society, 2 Cir., 1944, 140 F.2d 732, for reasons quite unconnected with possible indications of partiality. In re United States, 1 Cir., 1961, 286 F.2d 556, 561–562, rev'd on other grounds sub nom. Fong Foo v. United States, 369 U.S. 141, 82 S.Ct. 671, 7 L.Ed.2d 629. The Commonwealth's judge's intervention is not ancillary. It is fundamental, and continuous throughout the trial. Even more important, he is primarily motivated to speak only on one side.

Not only is the Commonwealth procedure unknown in our federal courts, but

---

4. Since the date of petitioner's conviction, the nature of the appeal from District Court convictions resulting in jail sentences has been changed to permit a trial de novo in the Superior Court. P.R.R. Crim.P. 216(g). This change does not affect petitioner's case, nor, therefore, render the question moot so far as he is concerned.

5. "The interpretation * * * [that he is to 'act as judge and as prosecutor'] is out of touch with all logic, reason or acceptable juridical considerations." (Respondent's brief.)

6. The Commonwealth's brief, perhaps to build up its position, overstates the duties of a public prosecutor. It fails to recognize that he, too, has a duty not to convict an innocent person even though he might be able to make a case against him. Cf., e. g., Alcorta v. State of Texas, 1957, 355 U.S. 28, 78 S.Ct. 103, 2 L.Ed.2d 9.

it is unknown, so far as we can discover, in any state.[7] Only three cases in which a trial was so conducted have come to our attention. In People v. Hickin, County Ct., 1959, 19 Misc.2d 629, 196 N.Y.S.2d 930, and People v. Charles, County Ct., 1958, 15 Misc.2d 401, 180 N.Y.S.2d 635, the court voided the proceeding without discussion. It is true that in McIntosh v. People of Virgin Islands, 3 Cir., 1936, 83 F.2d 380, a conviction so obtained was affirmed. The United States Attorney, having unsuccessfully moved for leave to enter a *nolle prosequi*, failed to appear for the trial. The defendant was tried to the court, the witnesses being examined on behalf of the government by the trial judge. The defendant was represented by counsel, who participated in the entire proceeding and raised no objection. While the court of appeals affirmed, it is clear that it did so in large measure because of the defendant's acquiescence. At the same time, it "strongly censured" the procedure. We believe this case more significant for its censure than for its result.

Two decisions of the Supreme Court, while not directly in point, cast more authoritative light. In Wong Yang Sung v. McGrath, 1950, 339 U.S. 33, 70 S.Ct. 445, 94 L.Ed. 616, the Court was called upon to decide whether certain provisions of the Administrative Procedure Act applied to deportation proceedings conducted by the Immigration Service. Departmental regulations required the presiding inspector to interrogate and cross-examine the alien and his witnesses and, if necessary, to present evidence in behalf of the government. In holding applicable to such proceedings the Act's requirements of separation of prosecuting and decision-making duties, the Court emphasized the unfairness of commingling these functions, and indicated that to hold otherwise might bring the procedure "into constitutional jeopardy."

In In re Murchison, 1955, 349 U.S. 133, 75 S.Ct. 623, 99 L.Ed. 942, the Court held that the fourteenth amendment forbade a judge who had charged witnesses with contempt while conducting a "one man grand jury" from presiding over their subsequent trial for contempt. Although the facts are readily distinguishable, the Court's language is highly pertinent.

"A fair trial in a fair tribunal is a basic requirement of due process. Fairness of course requires an absence of actual bias in the trial of cases. But our system of law has always endeavored to prevent even the probability of unfairness. To this end * * * no man is permitted to try cases where he has an interest in the outcome. That interest cannot be defined with precision. Circumstances and relationships must be considered. This Court has said, however, that 'every procedure which would offer a possible temptation to the average man as judge * * * not to hold the balance nice, clear and true between the State and the accused denies the latter due process of law.' * * * Such a stringent rule may sometimes bar trial by judges who have no actual bias and who would do their very best to weigh the scales of justice equally between contending parties. But to perform its high function in the best way 'justice must satisfy the appearance of justice.'" 349 U.S. at 136, 75 S.Ct. at 625.

We are satisfied that a federal or state court procedure, by which the judge was the one to introduce the government's evidence, and cross-examine on the government's behalf, would neither satisfy the appearance of justice nor be considered free of the "possible temptation * * * not to hold the balance nice, clear and true between the State and the accused,"

7. We do not take account of certain magistrates courts from which a dissatisfied defendant can, by appeal, obtain a trial de novo, e. g., La.Const. Art. VII, § 36; La.Laws Title 13, § 1896. Such remedy may, or may not, be thought to protect the original trial from local appellate criticism, cf. Application of Borchert, 1961, 57 Wash.2d 719, 359 P.2d 789 (4–3 opinion), but we believe it at least removes the constitutional objections.

and hence would deny the accused due process of law.

We recognize that in Cayetano Barranco, supra, note 1, the Supreme Court of Puerto Rico approved the District Court procedure presently under examination. With the greatest of deference, we think the court's conclusion stemmed from a hypothesis not necessarily . correct. Essentially, the court reasoned from the number of acquittals granted in the District Court that no unfairness in fact resulted from its procedure. The court stated that of the cases tried, only about 30% resulted in convictions.[8] Cases heard in the first instance in the Superior Court, where the Commonwealth is represented by a prosecuting attorney, result in about 53% convictions.

■ We of course accept the fact that these statistics demonstrate that judges sitting in the District Court are not unwilling to acquit the defendants in a large proportion of cases. It is less easy to accept the Puerto Rico Supreme Court's thesis that if the District Court's procedure were in fact unfair, "there should be, in good logic, rare cases of acquittals." A court might be less than neutral, and still not be willing to convict in some cases thought sufficient by the police. We do not suggest that the judge-prosecutor system is grossly unfair. It is enough that it may reasonably be thought appreciably unfair. In this light statistics in no way preclude the possibility that even fewer cases brought to trial would have resulted in convictions if the judicial and prosecutorial functions had not been combined.

Similarly, the comparison of the District Court's conviction rate with the higher rate of convictions in the Superior Court is necessarily conclusive because it does not take account of possibly significant variables. Thus, since the more serious criminal cases are heard in the Superior Court,[9] the Commonwealth may be considerably more careful in screening the cases brought to trial in that court. And because of the petty nature of the penalties imposed by the District Court,[10] the low percentage of convictions appealed may reflect the fact that the cost of appeal is disproportionate to the penalty, rather than that justice has been done.

Finally, the fact that over twice as many convictions appealed from the District Court are affirmed than are reversed cannot aid in establishing the fairness of the procedure under question. Unfortunately, the very nature of the unfairness complained of is such that it may not be visible on the face of the record, no matter how conscientiously the record is scrutinized by the appellate court. The judge's failure to fulfill his optimum judicial duty cannot be measured either by the form of the questioning, or by the adequacy of the evidence.

In sum, we do not believe that the Puerto Rico statistics rebut our conclusions. We unhesitatingly accept the Puerto Rico Supreme Court's view that Puerto Rico District Court judges possess an "honest conscience," and are dedicated to their judicial function. Nevertheless, we are unable to regard their additional duty as compatible with the untrammelled exercise of that function, and hence consistent with due process as we know it.

■ Although respondent does not contend that due process under the fed-

---

8. The statistics which the court reported can be summarized as follows. About 60% of defendants charged in the District Court plead guilty. Of those cases remaining, about 34% are dismissed. Of the cases left for trial, about 30% result in convictions, about 70% in acquittals. Appeals to the Superior Court are taken in about 7% of the convictions: about 47% of these are dismissed or abandoned, 38% affirmed, and 15% reversed or remanded.

9. Compare 4 L.P.R.A. § 121(b) with § 181(b).

10. We note, from the Court's statistics, that between a half and a third of the cases litigated in the District Court involve traffic offenses.

eral constitution permits something different in the Commonwealth of Puerto Rico than in the states of the United States, we believe this is a matter that deserves consideration.

In Balzac v. People of Porto Rico, 1922, 258 U.S. 298, 42 S.Ct. 343, 66 L.Ed. 627, the Court had before it the question whether the sixth amendment to the federal constitution imposed upon Puerto Rico the obligation to provide a jury in a criminal trial. The Court construed the Organic Act of 1917, and held that it did not make Puerto Rico an "incorporated" territory subject to the guaranties of this amendment. It made, however, the following pertinent observation:

> "The guaranties of certain fundamental personal rights declared in the Constitution, as, for instance, that no person could be deprived of life, liberty or property without due process of law, had from the beginning full application in the Philippines and Porto Rico, * * *." 258 U.S. at 312–313, 42 S.Ct. at 348.

We have acted consistently within that framework. People of Puerto Rico v. Eastern Sugar Associates, 1 Cir., 1946, 156 F.2d 316, cert. den. 329 U.S. 772, 67 S.Ct. 190, 91 L.Ed. 664; Mora v. Mejias, 1 Cir., 1953, 206 F.2d 377; Mora v. Mejias, 1 Cir., 1955, 223 F.2d 814; Figueroa v. People of Puerto Rico, 1 Cir., 1956, 232 F.2d 615; Fournier v. Gonzalez, 1 Cir., 1959, 269 F.2d 26, cert. den. sub nom. Sampedro v. People of Puerto Rico, 359 U.S. 931, 79 S.Ct. 610, 3 L.Ed.2d 633.

In the *Mora* cases, supra, we considered whether the compact between the people of Puerto Rico and the Congress had altered the applicability of federal due process within the Commonwealth. We concluded that either the fifth or the fourteenth amendment continued to apply, but that it was not necessary to decide which. Nor need any selection be made in the present case.

We think the Third Circuit case of Soto v. United States, 3 Cir., 1921, 273 F. 628, rather than McIntosh v. People of Virgin Islands, supra, to be the telling decision. *Soto* reflects the presently prevailing view that some uniform concept of federal due process is guaranteed to all citizens of the United States. In that case the defendants were tried for murder. Some of the witnesses having left the jurisdiction, their testimony, taken by deposition, was introduced. Under Danish law, this was permissible. The government pointed out that the Organic Act applicable to the Virgin Islands left the Danish law in effect "insofar as compatible with the changed sovereignty * * *." To this the court replied that permitting a defendant to be tried without the opportunity to confront witnesses against him did not afford him "due process," and that Danish law in this respect could not control, even under the limited applicability of the federal constitution recognized for unincorporated territories.

■ In the present case it could not even be contended, as it was in *Soto*, that the procedure in question is an integral part of that jurisdiction's legal tradition or heritage. When, in the 1917 Act, Congress provided for "due process" in Puerto Rico, Organic Act of 1917, c. 145, § 2, 39 Stat. 951, a defendant dissatisfied with a District Court trial could have, as of right, a trial de novo in the Superior Court. People v. Toro, 1962, 84 P.R.R. 473, 479. This right was specifically withdrawn by the Judiciary Act of 1952, § 19, 4 L.P.R.A. § 122. Since the conviction of the present petitioner, however, a right to trial de novo in the Superior Court in cases where a jail sentence is imposed has been reestablished by rule. P.R.R.Crim.P. 216(g), 34 L.P.R.A.App. II R. 216(g). Hence it could not be successfully argued that the opportunity for a trial with a prosecutor is inconsistent with the history or tradition in Puerto Rico.

■ We must agree, then, with respondent's apparent assumption that no distinction should be drawn in this case between Puerto Rico and the several states. Insofar as the guaranty of the

federal constitution is concerned,[11] however, we cannot agree that defendant has been afforded due process.

The action is remanded with instructions to grant the writ.

11. Since the compact, of course, interpretation and application of the due process clause in the constitution of the Commonwealth is the prerogative of the Supreme Court of Puerto Rico. Mora v. Mejias, supra, 206 F.2d at 382.