**Irma WOUNDED KNEE et al.**

**v.**

**Leonard ANDERA, in his official capacity as Judge of the Crow Creek Sioux Tribal Court, and Willian Long, in his official capacity as Captain of the Crow Creek Sioux Tribal Police.**

**No. CIV76–3033.**

United States District Court, D. South Dakota.

Aug. 13, 1976.

Gary R. Thomas, Fort Thompson, S. D., for plaintiff.

David Bergren, Fort Pierre, S. D., for defendant.

## MEMORANDUM OPINION

BOGUE, District Judge.

In early July, 1975, Irma Wounded Knee, an enrolled, adult member of the Crow Creek Sioux Tribe (hereinafter Petitioner) was arrested within the confines of the Crow Creek Indian Reservation and charged with the crime of disorderly conduct. She posted bond and was released from the tribal jail.

On or about November 14, 1975, she appeared in tribal court and by her counsel made an oral motion to dismiss the charges on the theory that a fair trial was not possible by virtue of the fact that the tribal judge was acting in the dual capacity of judge and prosecutor. Judge Andera, tribal judge for the Crow Creek Sioux Tribe, reserved ruling on the motion, requested that the motion be resubmitted in writing, and commenced to try the case. After the presentation of the tribe's case, Petitioner again moved by her counsel for a dismissal on the ground that the judge could not be fair and impartial when he had to double as prosecutor. Again, ruling was reserved and the trial was continued until such time as the motions could be resubmitted in writing and the tribal court could respond with a written opinion.

On November 20, 1975, Petitioner submitted in writing a motion to dismiss and as grounds for dismissal stated:

> The current practice of the Crow Creek Sioux Tribal Court of having the tribal judge act in the dual capacity of both tribal judge and prosecutor violates the defendant's rights under the 1968 Indian Civil Rights Act to a fair and impartial trial and to due process of law. (Plaintiff's Ex. 2).

In addition, a motion for a new trial was made on the same grounds. (Plaintiff's Ex. 2.) Also, on November 20, 1975, Petitioner's counsel wrote to the chairperson of the Crow Creek Sioux Tribe and to the tribe's attorney in an effort to informally come to an agreement that the tribe could provide a prosecutor. (Plaintiff's Ex. 3.) This effort to resolve the dispute locally and informally was not productive.

On November 24, 1975, Judge Andera filed his decision on Petitioner's motions. In a succinct and thoughtful opinion, he explained that the situation wherein he was required to perform in a dual capacity was "considerably less than desirable," but denied both the motion to dismiss and the motion for a new trial. The motion for a new trial was ruled to be untimely because the case for the defendant had not yet been presented; the motion to dismiss was denied on the following rationale:

> The Defendant was afforded the right to counsel, the right to confront the witnesses against her, the right to cross-examine, the right to compulsory process, and the right against self-incrimination. She was further allowed to enter a plea of not guilty and a trial was had on the basis of the complaint, duly signed and served. . . . While this Court feels that the burden placed upon the Court by requiring it to act as both arbiter and prosecutor could well result in the inability to receive a fair trial under certain circumstances, that fact alone is insufficient to sustain the motion for all the reasons set forth above. (Plaintiff's Ex. 1.)

On December 19, 1975, Petitioner again appeared in tribal court; Petitioner's counsel presented the case for the defense and the trial was concluded. Petitioner was found guilty of disorderly conduct and sentenced to five (5) days in jail, a fifteen dollar ($15) fine and ten dollars ($10) court costs. Execution of the sentence has been stayed pending pursuance of legal remedies.

On December 29, 1975, Petitioner filed a request for permission to appeal Judge Andera's rulings in accordance with the "appeals section" of the Crow Creek Tribal Code. This Court finds that the request for permission to appeal was timely in accordance with subsection (f) of the "appeals section" which requires such requests to be filed within thirty (30) days after the day the order appealed from was rendered. This Court further finds that the request was filed with the proper person, *i. e.* the clerk of the tribal court, because subsection

(b) of the "appeals section" designates the clerk of the tribal court as clerk of tribal court of appeals, and subsection (f) requires the request be filed with the clerk of the court of appeals.

For almost six months Petitioner awaited some action on the request for permission to appeal; nothing was forthcoming. On June 18, 1976, a petition for a writ of habeas corpus was filed with this Court in Rapid City. A hearing was held July 8, 1976.

At the hearing the reason for inaction on the request for appeal to the tribal appellate court became obvious. The relevant section of the tribal code directs the clerk of courts to forward the request for permission to appeal to the "chief judge." Judge Andera stated that he knew of no "chief judge" to whom the clerk could have forwarded the request; moreover, his testimony indicates that after being a tribal judge at Crow Creek for over two (2) years Judge Andera thought *he* was the *only* tribal judge there was on the Crow Creek Reservation. Apparently, nobody in the Crow Creek legal community knew any court to be in existence other than the tribal court presided over by Judge Andera despite the specific provisions of the tribal code for an appellate tribunal.

Mrs. Elnita Rank, chairperson of the tribe, testified that the tribe did have an appellate court and had this matter come to her attention, she would have set the machinery in motion to have judges appointed and an appellate tribunal would have convened to hear the appeal. It is not contested that the code is devoid of any requirement that an appellant contact the tribal chairperson to perfect an appeal; it was merely stated that the necessity of seeking out the chairperson derived from the duty of the chairperson to oversee the whole of reservation life.

In any event, although an appellate procedure was available in theory, no appeal within the reservation legal system was accomplished in fact, and Petitioner now seeks to have her dispute with the tribal officials settled in federal court.

I.

The first question presented for our consideration is:

WHETHER EXHAUSTION OF TRIBAL REMEDIES IS REQUIRED BEFORE PETITIONING FOR A WRIT OF HABEAS CORPUS UNDER THE INDIAN CIVIL RIGHTS ACT?

■ Petitioner argues that the law does not require exhaustion of tribal remedies before petitioning for a writ of habeas corpus under the Indian Civil Rights Act. Petitioner cites us to 28 U.S.C. § 2254(b) wherein the requirement to exhaust state remedies before pursuing habeas corpus relief was specifically written into the law by Congress. By contrast, it is argued, that 25 U.S.C. § 1302 *et seq.* contains no explicit exhaustion requirement in regard to habeas corpus relief; and, because no explicit exhaustion requirement is present, none should be required by the courts. The argument seems logical enough, and if we had only the statutes and no case law, we might be inclined to accept it. This Court concludes, however, that the case law which has arisen under the Indian Civil Rights Act evidences a very strong policy favoring exhaustion of all tribal remedies before federal courts get involved in tribal disputes and we conclude there is no reason to cast aside the exhaustion doctrine when petitions for writs of habeas corpus are filed. This Court holds explicitly that tribal remedies must be exhausted before petitioning in federal court for a writ of habeas corpus.

The seminal case in this area is *O'Neal v. Cheyenne River Sioux Tribe*, 482 F.2d 1140 (8th Cir. 1973) wherein the Eighth Circuit examined the congressional policy behind the Indian Civil Rights Act and determined that generally plaintiffs who do not exhaust tribal remedies in civil disputes with a tribe are prohibited from bringing suit in federal court. The exhaustion doctrine as applied to potential tribal remedies was controlling in *Janis v. Wilson*, 521 F.2d 724 (8th Cir. 1975), wherein the Eighth Circuit stated in reference to federal power over intra-tribal disputes:

The invocation of this power necessary for the efficacy of the Indian Civil Rights Act is, however, ordinarily conditioned on the exhaustion of tribal remedies, both administrative and judicial. 521 F.2d at 726, 727.

Immediately after this quotation the Eighth Circuit cited *United States ex rel. Cobell v. Cobell,* 503 F.2d 790 (9th Cir. 1974), and parenthetically noted that the *Cobell* case stands for the proposition that exhaustion is normally required in habeas corpus proceedings from tribal court. *See Cobell,* at 793.[1] Because of this reference and because of the policy underlying exhaustion, we conclude that in this circuit as well as the Ninth Circuit, exhaustion is required before petitions for writs of habeas corpus can be entertained in federal court.

## II.

We are compelled to consider a second question:

WHETHER PETITIONER, BY FILING A REQUEST FOR PERMISSION TO APPEAL AND WAITING APPROXIMATELY SIX MONTHS WITHOUT ACTION BY THE TRIBE, HAS EXHAUSTED HER TRIBAL REMEDIES?

After examination of the testimony taken at the hearing and after inquiry into the requirements of the exhaustion doctrine, this Court concludes that Irma Wounded Knee has as a matter of law exhausted her tribal remedies.

■ This conclusion derives first of all from the nature of the exhaustion requirement; it is not absolute, rigid and inflexible. In each case wherein an exhaustion question arises, the Court must make inquiry to see what the law demands under the circumstances. The need to adjudicate alleged deprivations of individual rights must be balanced against the need to preserve the cultural identity of the tribe by strengthening the tribe's own institutions.

*See O'Neal v. Cheyenne River Sioux Tribe, supra,* at 1146. In all events a Petitioner need not go through the motions of exhaustion if he or she proves that resort to remedies·provided by the tribe would be futile. *Janis v. Wilson, supra,* at 729; *Rosebud Sioux Tribe v. Driving Hawk,* 534 F.2d 98 (8th Cir. 1976). If a tribal remedy in theory is non-existent in fact or at best inadequate, it might not need to be exhausted. *See Schantz v. White Lightning,* 502 F.2d 67 (8th Cir. 1974) at 70 n. 6. If a Petitioner does all that is possible but an attempted appeal is frustrated by official inaction, no more can be demanded, and the exhaustion requirement is satisfied. *See Means v. Wilson,* 522 F.2d 833 (8th Cir. 1975), *citing Brown v. United States,* 486 F.2d 658 (8th Cir. 1973). In the *Brown* case the Appeals Court gave the exhaustion question short shrift and stated:

> The plaintiffs sought relief in the Tribal Court and were denied an *effective timely* remedy. (Emphasis added.) 486 F.2d at 661.

■ Thus, a Court should not demand exhaustion when remedies would be ineffective and meaningless. In *United States ex. rel. Cobell v. Cobell, supra,* the Ninth Circuit quoted with approval a district court's opinion which contained this language:

> "That remedies are available in theory, but not in fact, is not synonymous with failure to exhaust remedies. That ineffective and meaningless procedures were available to petitioner does not preclude his seeking a writ of habeas corpus." 503 F.2d at 794.

■ In the instant case we believe Petitioner did all that she reasonably could do to use the tribal appeals procedure. A request for permission to appeal was timely filed. As we noted earlier, the tribal judge was unaware of any appellate court on the reservation, so personal petitions to him to act on the appeal would have been in vain.

---

1. Interestingly enough, the Ninth Circuit in the *Cobell* case considered the same argument that Petitioner advances here; namely, that 28 U.S.C. § 2254 requires exhaustion and the absence of similar language in 25 U.S.C. § 1302 relieves Petitioners of the necessity of exhaustion. The Ninth Circuit rejected the argument nonetheless as does this Court.

Nothing in the tribal code directed Petitioner to seek out the tribal chairperson and petition her personally to convene an appeals court. Everything available to a resourceful legal mind was done; yet, six months elapsed and no hope for relief from the tribe appeared to be likely in the foreseeable future.

A tribal remedy may well have been available in theory, but it is obvious nothing was available in fact during the first one-half of 1976. A court that could in fact come into being at some time in the future is no court at all for settling present disputes. Any remedy potentially available to Petitioner through the tribal appellate process was rendered ineffective and meaningless by official delay and inaction. Therefore, the requirements of exhaustion in this case have been met, and this Court will proceed to the merits.

We will state first, however, that our conclusion as to the efficacy of the appeal procedure on the Crow Creek Reservation is not intended to discredit the system of justice now operating there. Judge Andera handled this matter with judicious care throughout, and the tribal chairperson evidenced a willingness to make the tribal system as effective as possible. This Court urges the tribe to implement and refine the appellate procedure authorized in the Crow Creek Tribal Code as it was obviously drafted with care and some foresight. The defect was not with the Tribal Code nor with the character of the persons involved; rather, there has simply been no recent, serious effort to make the appellate court a reality. Until such an effort is successfully made, the tribal court itself is the court of last resort on the Crow Creek Reservation.

### III.

The question on the merits can be reduced to one question:

WHETHER A TRIAL COURT WHEREIN ONE PERSON SERVES SIMULTANEOUSLY AS TRIBAL JUDGE AND AS TRIBAL PROSECUTOR IS SO INHERENTLY UNFAIR AS TO VIOLATE DUE PROCESS OF LAW AS GUARANTEED TO INDIAN PERSONS IN 25 U.S.C. § 1302(8)?

This Court has examined the law in this area and taken a careful look at the evidence produced in the hearing and concludes that the dual role played by whomever bears the title of tribal judge necessarily violates due process; i. e., regardless of the integrity and skill of the tribal judge, a fair trial cannot be had when the judge also has the duty of prosecuting.

The same legal question was faced by the First Circuit in *Figueroa Ruiz v. Delgado,* 359 F.2d 718 (1st Cir. 1966). Because the system challenged in that case is analogous to the system challenged in this present suit, the case merits our serious attention. Prior to 1966 the Commonwealth of Puerto Rico apparently furnished no prosecutors in district courts; by statute it was the duty of the trial judge to interrogate witnesses to press the Commonwealth's cause. The Petitioner Ruiz took his case to the Supreme Court of Puerto Rico and contended, not that any particular unfairness had occurred in his case, but rather that the whole procedure was inherently unfair and incompatible with the concept of due process of law. Being denied relief at the Supreme Court for Puerto Rico, he filed a petition for a writ of habeas corpus with the United States District Court for the District of Puerto Rico. Being denied relief there, he went to the First Circuit Court of Appeals which held explicitly that a combining of the judicial and prosecutorial functions in one person could not be consistent with due process in any circumstances even though the courts were all staffed with judges of "honest conscience." Their concise analysis of the problems inherent in the double role is appropriate here:

Under the procedure in the Puerto Rico District Court the judge must alternate roles in rapid succession, or even assume both at once. Thus, when interrogating a witness he is examining for the people, but when listening to the answer to the question he has propounded, he is weighing it as judge, and at the same time considering what question, as prosecutor,

to ask next. Correspondingly, when he listens to the answer to a question put by the defense, he must, as judge, impartially evaluate the answer, but, simultaneously, as prosecutor, he must prepare the next question for cross-examination. The mental attitudes of the judge and prosecutor are at considerable variance. To keep these two personalities entirely distinct seems an almost impossible burden for even the most dedicated and fair-minded of men. *Figueroa Ruiz v. Delgado,* 359 F.2d 718 (1st Cir. 1966) at 720.

We think that the concept of a fair trial which compelled the First Circuit to reject the system in Puerto Rico compels us to hold the system on Crow Creek violative of due process.

Judge Andera stated under oath at the hearing, and we find as fact, the following:

(1) that Judge Andera routinely asks questions of witnesses for the tribe, and although he would not definitely characterize it as such, this interrogation serves the same function as direct examination;

(2) that Judge Andera cross-examines defense witnesses;

(3) that in his role as tribal judge Mr. Andera has at times ruled questions of defense counsel to be improper;

(4) that Judge Andera's role as prosecutor is not merely ancillary, but is fundamental and continuous throughout a trial; and

(5) that in the opinion of the tribal judge himself some persons have been convicted *who would not have been convicted* had the judge not been required to play a dual role; and, likewise some have been acquitted who would not have been acquitted if the judge had not been required to serve in a dual capacity.

These findings are sufficient to establish an unfairness inherent in the system. There is no unbiased arbiter between the tribe and the accused no matter how conscientious the "judge" tries to be. As Judge Andera described it, his dual role makes him feel like a referee at a sporting event when only one team shows up.

The tribe argues that because the Indian Civil Rights Act does not require counsel for defendants, then by analogy, none should be required for the tribe. The analogy breaks down for this reason: a defendant, inarticulate though he or she may be, is in all criminal cases in tribal court a living person who to some degree, no matter how inartfully, *can* proceed pro se. The "tribe" is an impersonal entity; someone *must* speak for the tribe as the tribe collectively cannot act to prosecute anyone. Thus, while it could be unfair to try a person without defense counsel, it is impossible to try someone without a voice to elicit evidence for the tribe. Without a prosecutor the judge must necessarily at innumerable times in every case mentally assume the viewpoint of that governmental entity, the tribe, that seeks to bring a person to justice; and in assuming that prosecutorial role, the judicial role is momentarily cast aside. It is this necessity, the role switching, that renders the present system inherently violative of due process.

The tribe has expressed the viewpoint that it is financially unable to hire a prosecutor. This Court has been made keenly aware of the financial dilemma facing the Crow Creek Sioux Tribe, and is fully apprised of possible hardships that could result from our ruling. Nevertheless, financial obstacles cannot in any case be a reason for any governmental entity to deny persons liberties and rights secured by the federal Constitution or in this case, the Indian Civil Rights Act. The tribe need not hire a professional attorney; a lay person hired part-time may be sufficient. But the tribe must hire someone to present the tribe's case in order to allow the judge to be the unbiased, impartial person that the role demands.

The tribe contends that cultural and traditional Indian values will be injured if the tribe is required to hire a prosecutor. We find little merit in this contention. The judicial system is Anglo-American and assuredly not Indian; adding the safeguards

guaranteed in Anglo-American law certainly is no more of an encroachment upon the Indian way of life than the tribal court itself. Moreover, the tribe points to no specific values that will be lost but objects to a prosecutor on the abstract grounds that some aspects of sovereignty or autonomy will be threatened. To the extent that 28 U.S.C. § 1302 *et seq.* limits tribal autonomy they are correct, but such limits are the law and this Court is bound thereby.

The foregoing shall constitute this Court's findings of fact and conclusions of law.