28 P.3d 744 (2001)
144 Wash.2d 425
CITY OF BELLEVUE, Petitioner,
v.
Dee HELLENTHAL and Trevianna Chillies, Respondents.
No. 69881-3.
Supreme Court of Washington, En Banc.
Argued May 17, 2001.
Decided August 2, 2001.
*746 Jeffery D. Torrey, Bellevue, for Petitioner.
G. William Shaw, Seattle, for Respondents.
*745 MADSEN, J.
The City of Bellevue urges that a certificate authenticating a radar speed measuring device need not be prepared by a police officer to be admissible under IRLJ 6.6(b), and that the trial court may consider such a certificate in a contested hearing on a traffic infraction in the absence of a prosecuting attorney. We agree, and accordingly reverse the King County Superior Court and reinstate the trial court findings that the respondents committed traffic infractions of speeding.

FACTS
On September 26, 1998, Officer Deaner of the Bellevue Police Department obtained a radar-measured reading that Dee Hellenthal's vehicle was travelling 48 miles per hour in a posted 35 mile per hour zone and issued a notice of infraction for speeding. On October 9, 1998, Bellevue Police Department Officer Hershberger obtained a radar-measured reading that Ms. Hellenthal's vehicle was travelling 45 miles per hour in a posted 35 mile per hour zone and issued a notice of infraction for speeding. The notices were filed in Bellevue District Court. Each had attached to it and incorporated by reference a certificate by radar expert Ed Cole which stated his place of business, included a recitation of his training in repair, maintenance, and calibration of radar units, and stated that Cole had accumulated approximately 7,000 hours experience in the field. Each certificate also included information about the testing program and a list of radar units tested, including the units used by the officers in Ms. Hellenthal's cases.
Both infraction cases were set for a contested hearing. At the hearing, Ms. Hellenthal did not request the presence of the citing officer or a speed measuring device expert in either case. No prosecuting attorney was present. Hellenthal moved to strike evidence concerning use of radar, arguing in each case that the only evidence to authenticate the radar was Cole's certificate, and that this certification was inadmissible because it was not prepared by a police officer. She also said that the certificate could not be incorporated by reference where the officer had no personal knowledge of the information in it. She maintained that the only way the court could consider the certificate would be to offer it into evidence, which would place the court in the role of prosecutor and violate the separation of powers doctrine. The district court denied the motions in each case, and found the infractions committed. Hellenthal appealed.
On November 5, 1998, Officer Demetre of the Bellevue Police Department obtained a radar-measured reading that Trevianna Chillies' vehicle was travelling 44 miles per hour in a posted 30 mile per hour zone and issued a notice of infraction for speeding. The notice was filed in Bellevue District Court, with Ed Cole's certificate attached and incorporated by reference (with the same information as in Hellenthal's case, and also referencing the radar used by Officer Demetre).
Chillies waived the presence of the citing officer and the presence of a speed measuring device expert. At her contested hearing there was no prosecuting attorney present. Chillies moved to strike the officer's statement regarding the use of radar, on the grounds that Ed Cole was not a police officer. She also argued that the court's consideration of the certificate violated the separation of powers doctrine and due process. The court denied the motion and found that the infraction was committed. Chillies appealed.
The King County Superior Court consolidated the appeals, reversed the district *747 court's findings and dismissed the cases. This court granted discretionary review.[1]

ANALYSIS
The King County Superior Court held that IRLJ 6.6(b) does not allow a civilian radar expert to prepare a certificate authenticating the accuracy of speed measuring devices, and that IRLJ 3.3, IRLJ 6.6(b), and RCW 46.63.080 together allow only the written declaration of the citing officer and do not allow a speed measuring device certificate as an attachment to the officer's statement.
The first issue is whether IRLJ 6.6(b) requires that certificates authenticating radar devices be prepared by law enforcement officers. Respondents contend that under the rule, only a law enforcement officer can prepare the certificate allowed by the rule. The City of Bellevue maintains that the rule does not require that the expert preparing the certificate be a law enforcement officer.
IRLJ 6.6(b) provides that
[i]n the absence of proof of a request to produce an electronic speed measuring device (SMD) expert served on the prosecuting authority and filed with the clerk of the court at least 30 days prior to trial or such lesser time as the court deems proper, a certificate in substantially the following form is admissible in lieu of an expert witness in any court proceeding in which the design and construction of an electronic speed measuring device (SMD) is an issue:

Certification Concerning Design and Construction of Electronic Speed Measuring Devices
I, ______ do certify under penalty of perjury as follows:
I am employed with ______ as a ______. I have been employed in such a capacity for ______ years and hold the rank of ______. Part of my duties include supervising the purchase, maintenance, and repair of all electronic speed measuring devices (SMD's) used by my agency.
This agency currently uses the following SMD's:

[List all SMD's used and their manufacturers.]
I have the following qualifications with respect to the above stated SMD's:

[List all degrees held and any special schooling regarding SMD's listed above.]
Our agency maintains manuals for all of the above stated SMD's. I am personally familiar with those manuals and how each of the SMD's are designed and operated. All initial testing of the SMD's was performed under my direction. The units were evaluated to meet or exceed existing performance standards. Our agency maintains a testing and certification program. This program requires:

[State the program in detail.]
Based upon my education, training, and experience and my knowledge of the SMD's listed above, it is my opinion that each of these pieces of equipment is so designed and constructed as to accurately employ the Doppler effect in such a manner that it will give accurate measurements of the speed of motor vehicles when properly calibrated and operated by a trained operator.
 ______________
 Signature
*748 Dated: __________
Respondents maintain that references to holding "the rank of" and references to "my" "this" and "our" "agency" indicate that the certificate must be prepared by a police officer. Id.
When we interpret court rules we apply the same principles we apply when determining the meaning of statutes drafted by the Legislature. State v. Greenwood, 120 Wash.2d 585, 592, 845 P.2d 971 (1993); City of Bellevue v. Mociulski, 51 Wash.App. 855, 858, 756 P.2d 1320 (1988). The cardinal principle is that we ascertain and carry out the intent of the drafting body. State v. Radan, 143 Wash.2d 323, 329-30, 21 P.3d 255 (2001); State v. Chapman, 140 Wash.2d 436, 450, 998 P.2d 282, cert. denied, 531 U.S. 984, 121 S.Ct. 438, 148 L.Ed.2d 444 (2000). If the language of the rule is clear on its face, we give effect to its plain meaning and assume the rule means exactly what is intended. See Radan, 143 Wash.2d at 330, 21 P.3d 255; Chapman, 140 Wash.2d at 450, 998 P.2d 282.
IRLJ 6.6(b) does not state that a police officer must complete the certification form. Moreover, the rule provides only that the certification form must be "substantially" in the form shown. Plainly, variation from the example shown is permissible, provided the substance of the rule's requirements are contained in the form used.
The rule is intended to allow for authentication of a speed measuring device without the necessity of the expert appearing in the court proceeding. Thus, the substance of the rule is authentication. As the Court of Appeals correctly stated in Mociulski, authentication for a speed measuring device involves a compound determination:
Before the machine is deemed reliable, the witness testing the machines or monitoring the testing must first show his/her qualifications to make and/or evaluate the tests. The witness must first qualify as an expert via knowledge, skill, experience, training, or education. ER 702. After the witness has qualified as an expert, he/she must show that the machines passed the requisite tests and checks. Only then can the speed measuring devices be deemed reliable.
Mociulski, 51 Wash.App. at 860-61, 756 P.2d 1320.
Thus, the certificate must provide sufficient information, substantially as set out in IRLJ 6.6(b), to enable the trial court to readily make this compound determination of authenticity. Whether the person making the certificate is a police officer or not is irrelevant to this determination. We conclude that a certification made under IRLJ 6.6(b) need not be made by a law enforcement officer.
However, even if we found the language of the rule ambiguous, in light of the references to "rank" and "agency" in the example form, we would reach the same result. When a statute is ambiguous we resort to legislative history and other aids to construction. Cockle v. Dep't of Labor & Indus., 142 Wash.2d 801, 807, 16 P.3d 583 (2001); Kadoranian v. Bellingham Police Dep't, 119 Wash.2d 178, 185, 829 P.2d 1061 (1992). The form in IRLJ 6.6(b) is identical to that appearing in CrRLJ 6.13(d). As the Task Force Comment to CrRLJ 6.13 explains, section (d) resulted from the holding in City of Seattle v. Peterson, 39 Wash.App. 524, 693 P.2d 757 (1985) that radar evidence is inadmissible unless the device was designed and constructed so that it would give accurate readings when properly calibrated and operated. 4B LEWIS H. ORLAND & KARL B. TEGLAND, WASHINGTON PRACTICE, RULES PRACTICE, CrRLJ 6.13, task force cmt. at 560 (5th ed.1997). The certificate set forth in section (d) is based on a form suggested by the Washington State Patrol. Id. Given this origin of the form, it is not surprising that it contains the terms "rank" and "agency."
Neither the language nor the history of the rule dictates that only law enforcement personnel are qualified to act as radar experts, nor do they dictate that only law enforcement personnel are qualified as experts for purposes of preparing the certificate allowed for by CrRLJ 6.13(d). It follows that the same is true of IRLJ 6.6(b).
Mr. Cole's certificates are in substantially the form as that appearing in IRLJ 6.6(b) *749 and contain the information necessary for authentication. Each describes Mr. Cole's employment with a company retained by the City of Bellevue to maintain, repair, calibrate and certify electronic speed measuring devices. The certificates state that Cole engages in these activities. Each describes his education, experience, and qualifications with respect to these activities and states that he has accumulated approximately 7,000 hours in repairing, maintaining, calibrating and certifying speed measuring devices. Each certificate states that Cole's company is an authorized service center for all radar makes used by the City of Bellevue's Police Department and that the company maintains service manuals with schematics on these radar instruments. Each states that Cole is personally familiar with these manuals and states that the manuals are available for inspection on request for any contestant of a notice of traffic infraction issued by the City. Each certificate states that through education and experience Mr. Cole is personally familiar with the design, construction, and operation of the speed measuring devices used by the City's police department and that these instruments are designed and constructed to accurately employ the Doppler principle. Each certificate also states that the company maintains a quality assurance testing, calibration, and certification program and that each speed measuring device is tested approximately each twelve months. Each certificate describes the testing program in detail and lists the specific radar instruments submitted to the company for evaluation. Finally, each includes Cole's expert opinion that based on his education, training, experience and knowledge of the speed measuring devices listed, each device is designed and constructed to accurately and reliably employ the Doppler effect so as to give accurate measurements of the speed of motor vehicles when properly calibrated and operated by a trained operator.
The respondents complain, however, that the certificates do not include Cole's attestations that he supervised the purchase of the devices as part of his duties, nor that his duties include supervising the initial testing of all speed measuring devices used by the Bellevue Police Department. For these additional reasons, respondents argue, the certificates are not substantially in the form set out in IRLJ 6.6(b).
We disagree. Supervision of purchase and of initial testing is not critical to authentication, provided that the witness who has qualified as an expert shows that the devices have passed the tests and checks necessary to establish that they meet or exceed the relevant performance standards.
The next issue is whether the trial court properly considered the certificates when they were appended to the citing officers' statements and there was no prosecuting attorney present to offer them into evidence. Initially, we agree with respondents that the certificates are not admissible by reference as part of the citing officers' written reports because there is no indication that the police officers themselves had personal knowledge of the information contained in the certificates.
However, even though the certificates were not properly part of the officers' testimony, the trial court still properly considered them. IRLJ 3.3(b) provides that in a contested hearing on a traffic infraction the plaintiff shall be represented by counsel when a local court rule requires this. RCW 46.63.080 similarly provides that in such proceedings the attorney representing the state, county, city, or town may appear but need not do so, notwithstanding any statute or court rule to the contrary. (There is no argument here that a local rule required the presence of a prosecuting attorney in these cases.) As noted, IRLJ 6.6(b) provides for the certificate's admission in lieu of the expert's presence, unless the defendant timely requests that the expert appear. Finally, IRLJ 3.3(c) provides that "[t]he court may consider the notice of infraction and any other written report made under oath submitted by the officer who issued the notice or whose written statement was the basis for issuance of the notice in lieu of the officer's personal appearance" unless the defendant secures the officer's presence in accord with the rule's procedures. See also RCW 46.63.090.
*750 These rules are designed to facilitate an expeditious system for disposing of traffic infractions. See IRLJ 1.1(b) (the Infraction Rules for Courts of Limited Jurisdiction "shall be construed to secure the just, speedy, and inexpensive determination of every infraction case"); see also RCW 46.63.010. The rules contemplate that a contested hearing may proceed without a prosecuting attorney and without the citing officer's presence. They also allow a certificate to stand in the stead of the expert witness on speed measuring devices. Requiring a prosecuting attorney's presence for the purpose of offering the expert's certificate into evidence, as respondents suggest is necessary, runs contrary to the entire scheme. Court rules relating to each other, like statutes relating to each other, should be read as complementary, rather than in conflict. See Chapman, 140 Wash.2d at 448, 998 P.2d 282; In re Personal Restraints of Yim, 139 Wash.2d 581, 592, 989 P.2d 512 (1999). Accordingly, we read IRLJ 6.6(b) as allowing not only for admissibility of the certificate, but for its consideration by the court as well.[2]
Lastly on this issue, we note that the certificates are not objectionable on the grounds of hearsay. ER 802 states that "[h]earsay is not admissible except as provided by these rules, by other court rules, or by statute." (Emphasis added.) IRLJ 6.6(b)'s certificate is an exception to the hearsay rule.
The next issue is raised by the respondents, who claim that the trial court's consideration of the certificates amounts to the court having offered the certificates into evidence itself in violation of due process and the separation of powers doctrine. Respondents maintain that the court assumed the role of the prosecuting attorney. We disagree.
We are aware of no authority for the proposition that a trial court's notice of authentication evidence like that at issue here, admissible without the expert's presence pursuant to court rule or statute, constitutes violation of due process or the separation of powers doctrine. The cases cited by respondents relating to fairness primarily are cases where the court affirmatively called or examined witnesses on behalf of a party to the litigation or literally acted as both judge and prosecutor. E.g., Figueroa Ruiz v. Delgado, 359 F.2d 718 (1st Cir.1966); Giles v. City of Prattville, 556 F.Supp. 612 (M.D.Ala.1983); Wounded Knee v. Andera, 416 F.Supp. 1236 (D.S.D.1976); People v. Martinez, 185 Colo. 187, 523 P.2d 120 (1974); People v. Cofield, 9 Ill.App.3d 1048, 293 N.E.2d 692 (1973). The court in these infraction cases clearly did not assume the role of prosecutor when considering the radar expert's certificates as authorized by court rule.
Nor was there any violation of the separation of powers doctrine. The inquiry is whether the trial court's actions here "threaten[ ] the independence or integrity or invade[ ] the prerogatives of" the executive branch. See Carrick v. Locke, 125 Wash.2d 129, 135, 882 P.2d 173 (1994) (quoting Zylstra v. Piva, 85 Wash.2d 743, 750, 539 P.2d 823 (1975)). The trial court's consideration of Mr. Cole's certificates falls within the activities historically and traditionally engaged in by the judicial branch.
The trial court properly denied respondents' motions to strike the expert radar testimony in the form of the certificates prepared according to IRLJ 6.6(b). We reverse the King County Superior Court and reinstate the trial court's findings that respondents committed the infractions.
ALEXANDER, C.J., IRELAND, BRIDGE, CHAMBERS, and OWENS, JJ., concur.
*751 JOHNSON, J. (dissenting).
Traffic court is often the only exposure Washington citizens will have to the judicial branch. For these citizens, traffic court forms the basis for their understanding of due process. Due process is founded upon an impartial tribunal and the appearance of impartiality is essential to judicial credibility. Yet, in the face of these considerations, the majority chooses to erode the appearance of judicial impartiality in favor of efficiency. The appearance of justice is lost, even where a just result is achieved, when the State's only representative at a contested traffic hearing is the judge who moves evidence into the record on the State's behalf. The United States Supreme Court has recognized that "to perform its high function in the best way `justice must satisfy the appearance of justice.' " In re Murchison, 349 U.S. 133, 136, 75 S.Ct. 623, 99 L.Ed. 942 (1955) (quoting Offutt v. United States, 348 U.S. 11, 14, 75 S.Ct. 11, 99 L.Ed. 11 (1954)). The majority compromises this appearance of justice in Washington. I respectfully dissent.
The majority's holding must be evaluated against the existing landscape of due process jurisprudence because it concerns the ability of a trial court judge to consider evidence not offered by a party to the dispute. The principle of impartiality is as old as the courts. It is a fundamental idea and it is the acknowledged inviolability of this principle that gives credibility to judicial decrees. State ex rel. Barnard v. Bd. of Educ., 19 Wash. 8, 17-18, 52 P. 317 (1898). Common law, as well as due process under both the federal and state constitutions, guarantees to every defendant a trial before a fair and impartial judge. The law requires more than an impartial judge; it requires the judge to appear to be impartial. State ex rel. McFerran v. Justice Court, 32 Wash.2d 544, 202 P.2d 927 (1949); Diimmel v. Campbell, 68 Wash.2d 697, 414 P.2d 1022 (1966). A trial judge advocating on behalf of one party to a dispute denies due process of law. See, e.g., Figueroa Ruiz v. Delgado, 359 F.2d 718 (1st Cir.1966); Giles v. City of Prattville, 556 F.Supp. 612 (M.D.Ala. 1983); Wounded Knee v. Andera, 416 F.Supp. 1236 (D.S.D.1976); People v. Martinez, 185 Colo. 187, 523 P.2d 120 (1974); People v. Cofield, 9 Ill.App.3d 1048, 293 N.E.2d 692 (1973). The need for an impartial judge applies to a civil setting. "The Due Process Clause entitles a person to an impartial and disinterested tribunal in both civil and criminal cases." Marshall v. Jerrico, Inc., 446 U.S. 238, 242, 100 S.Ct. 1610, 64 L.Ed.2d 182 (1980). Where the impartiality of a judge reasonably may be questioned, the Code of Judicial Conduct requires the judge's disqualification. Canon 3(D)(1).
The majority misstates the limitations on judicial conduct necessary to preserve due process. It does so by suggesting the cases cited by respondents relating to fairness stand for the limited proposition that due process is lost only where a judge affirmatively calls witnesses or is assigned a prosecutorial role. The majority then summarily concludes that the trial judge in these traffic infraction cases "clearly did not assume the role of prosecutor." Majority at 750. However, these cases do not stand for this limited proposition. None turn on whether a judge actively called witnesses or was the designated prosecutor. Instead, all focus on the disadvantaged party's lost due process protections when the judge advocated the opposing party's position. In Figueroa Ruiz, the Court of Appeals struck down a Puerto Rican court procedure requiring trial judges to advocate by admitting documents (like the speed measuring device (SMD) certification) and questioning defendants (like respondents). Figueroa Ruiz, 359 F.2d at 722. In Giles, the district court found a court procedure allowing trial judges to prosecute misdemeanor offenses (similar to the traffic infractions here and for some of the same considerations) violated due process. Giles, 556 F.Supp. at 617. In Wounded Knee, the district court reached the same conclusion upon reviewing a similar scheme practiced in a tribal court. In its analysis, the court noted, "it is impossible [for the tribe] to try someone without a voice to elicit evidence for the tribe." Wounded Knee, 416 F.Supp. at 1241. Where the judge assumed the role of the tribe's voice, the judicial role was cast aside and due process was lost. Id. at 1241. In Martinez, the Colorado Supreme Court, found a trial judge had acted as an advocate rather than a judge, in violation of due process, *752 by admitting a prehearing transcript and questioning witnesses. Martinez, 185 Colo. at 189, 523 P.2d 120. Similarly, in Cofield, the Illinois court of appeals held a trial judge had departed from the role of judge when the judge advocated the State's position by questioning witnesses, even though a prosecutor was present at the trial. Cofield, 9 Ill.App.3d at 1051, 293 N.E.2d 692.
The high standards of judicial impartiality from the above cases are no less firmly protected by our prior decisions and the Code of Judicial Conduct. For example, in the past when violations of the traffic code still constituted a criminal matter, it was proper for a justice of the peace to transfer venue when the judge believed impartiality could not be maintained. We found the judge's actions were essential to the due administration of justice. McFerran, 32 Wash.2d at 549-50, 202 P.2d 927. Similarly, in Diimmel, the trial judge in a quiet title action properly avoided the appearance of unfairness by granting a new trial after entering an impartial judgment upon learning the decision might appear to have been influenced by a former law partner. We found the judge's actions conformed to the highest standards of judicial conduct because they avoided the suspicion of irregularity in the discharge of the judge's duties. Diimmel, 68 Wash.2d at 699, 414 P.2d 1022. Canon 3 of the Code of Judicial Conduct establishes that this is the high standard necessary to protect judicial impartiality. Under this standard, even truly impartial judges who find their impartiality "might reasonably be questioned" should disqualify themselves. Canon 3(D)(1). The comment to Canon 3(A)(5) explains the appearance of bias "impairs the fairness of the proceeding and brings the judiciary into disrepute." Canon 3(A)(5) cmt.
The majority's holding retreats from the standard of impartiality we have previously affirmed. In these "contested" traffic hearings, the only state official present to contest the citizens' versions of events was the trial judge. In these contests, both judges offered SMD certification evidence by taking judicial notice of documents that had no other way of entering the records. The trial judges elicited testamentary evidence as well. The judges questioned witnesses unfavorable to the State's position that the infractions had occurred, asking for speedometer readings, specific locations of the violations, and awareness of the police officer's presence. These questions were not impartial. The questions advanced the State's cases that respondents had committed speeding infractions. These trial judges acted as state prosecutors in violation of common law and due process protections afforded by the federal and state constitutions.
Having improperly dismissed the constitutional claims presented, the majority proceeds to rewrite the rules of evidence. The rules of evidence shall apply to traffic infractions. IRLJ 3.3(c). However, the majority's analysis does not trace a logical path through the evidence rules. First, the majority identifies the SMD certification as an authenticating document. Majority at 748-49. Next, the majority concedes had a police officer directly offered evidence of the SMD certification, it would fail for lack of personal knowledge under ER 602. Majority at 749. Both statements are correct, so far as they go. But, the majority then makes an illogical leap by characterizing the SMD certification as the subject of a hearsay exception under ER 802. Majority at 750. This characterization implies that a determination of admissibility is no different than admitting the document. But cf. ER 104(a); 5 Karl B. Tegland, Washington Practice: Evidence Law and Practice § 104.5, at 98 (4th ed.1999). This is incorrect. ER 104(a) is not a rule for admitting evidence by the court. ER 104(a) allows the court to consider otherwise inadmissible evidence to determine the admissibility of evidence offered by one of the parties. Nor does a determination of admissibility confer the status reserved for adjudicative facts. Cf. ER 201(b). Under the rules of evidence, hearsay is an out-of-court statement offered to prove the truth of the matter asserted. ER 801(c). Even the most liberal reading of IRLJ 6.6(b) will not excuse the basic procedure for admitting evidence. The State had no proponent to offer the SMD certification so that it might be subject to a hearsay exception. Nor was the SMD certification a matter of public record so that it could have been a matter for judicial notice. There was no evidentiary basis for the trial court to consider the SMD certification.
*753 Finally, after incorrectly analyzing the constitutional issue and failing to apply the rules of evidence, the majority misstates the principles of statutory construction. In its analysis of court rule interpretation, the majority cites State v. Greenwood,[1] but then ignores the statement that "a material change in the language of the original act is presumed to indicate a change in legal rights." Greenwood, 120 Wash.2d at 592-93, 845 P.2d 971 (citing 1A Norman A. Singer, Statutory Construction § 22.30 (4th ed.1985)). The addition of a new subsection to a court rule is a material change. The majority misstates the effect of the amendment to IRLJ 6.6 that occurred after the contested traffic hearings. Amended IRLJ 6.6 makes the SMD certification a public document that may be judicially noticed but that shall be suppressed if it has not been filed as required. IRLJ 6.6(d). The amendment does not demonstrate that the SMD certification was implicitly available for judicial notice before its revision. Majority at 750 n. 2. On the contrary, it demonstrates that the SMD certification was not the proper subject of judicial notice. As a matter of statutory construction, this amendment refutes the majority's position.
The majority focuses on the need for efficiency in resolving contested traffic hearings, thereby disregarding due process protections. Far from a matter to be disposed of lightly, the appearance of justice in a traffic court setting is particularly important. Citizens often stand alone against the arrayed representatives of the State's authority in contested traffic infractions. This setting frequently represents a citizen's only exposure to the judicial process. Under these circumstances, it is more, not less, important that the appearance of justice is preserved. The superior court correctly analyzed the issues presented in these cases under our existing jurisprudence. I would affirm the superior court.
SANDERS and SMITH, JJ., concur in dissent.
NOTES
[1] The City of Bellevue moves to strike portions of respondents' brief on the basis that it refers to matters not in the record. We grant the motion in part and deny it in part. An appendix consisting of a Department of Licensing manual is not part of the record and is stricken. See RAP 10.3(a)(7). Reference to a trial brief that was not made part of the record on appeal is stricken. References at page 6 of the brief to the trial court having offered and admitted Mr. Cole's certificates into evidence are not factual statements, but are instead part of respondents' argument. Although they are misplaced, we do not strike the challenged statements. We also do not strike portions of respondents' statement of facts referring to the transcripts of the electronic records and other court documents, as these materials are found in the Clerk's Papers. Respondents should have cited to the record, however. Our analysis of this case has not involved consideration of the portions of the brief which are stricken.
[2] We note that IRLJ 6.6 has been amended to provide that the certificate allowed by the rule can be filed with the court as a public record, and will be available for inspection by the public, with copies made on request. The amendment also expressly provides that the court may take judicial notice of the fact the document has been filed with the court, and that evidence will not be suppressed merely because no representative of the prosecuting authority is present to actually offer it. IRLJ 3.3(b). The rule now makes explicit what was implicit beforethat the court may judicially notice the certificate authorized by the rule, specifically in light of the fact that the certificate can now be filed as a public record.
[1] 120 Wash.2d 585, 845 P.2d 971 (1993).