[No. 71452-5.   En Banc.]

Argued May 7, 2002.     Decided October 10, 2002.

THE STATE OF WASHINGTON, *Respondent*, v. ALMA CHRISTINA MORENO, *Petitioner*.

*Glen A. Prior*, for petitioner.

*Gerald A. Horne*, *Prosecuting Attorney*, and *John C. Hillman*, *Deputy*, for respondent.

*Pamela B. Loginsky* on behalf of Washington Association of Prosecuting Attorneys, amicus curiae.

OWENS, J. — The main issue in this case is whether it violates the separation of powers doctrine or due process for a district court judge to call and question the State's witnesses in a traffic infraction hearing without a prosecutor present. On RALJ appeal the superior court concluded

that it did not. We conclude that we have jurisdiction to hear the case and affirm.

## FACTS

On October 23, 1999, Washington State Patrol Trooper Tina McManus stopped and cited Alma Moreno for speeding under RCW 46.61.400. The notice of infraction indicated that a $90 fine would be assessed. The officer's written statement says that she determined Moreno's speed by radar. According to the statement, Moreno accused Trooper McManus of stopping her because of her race.

Moreno contested the citation and retained counsel. At Moreno's request, Pierce County District Court No. 1 subpoenaed Trooper McManus and a radar expert. Moreno also sent two discovery requests to the Pierce County Prosecutor. Under IRLJ 3.1(b) she was entitled to discovery of a list of witnesses the State intended to call at the hearing and the officer's statement. The district court sent her the officer's statement, but the prosecutor did not respond to her requests.

On July 18, 2000, Moreno, her attorney, Trooper McManus, and the radar expert attended the contested hearing. No prosecutor appeared. The judge swore in the witnesses and said, "[t]he court will hear from Ms. McManus, who is Tina McManus, Trooper." Clerk's Papers (CP) at 28. Moreno objected and moved to dismiss for failure to prosecute. The court denied the motion to dismiss, but allowed Moreno to state her objections on the record. Moreno argued that it was improper for the judge to act "as a lawyer and judge in the same proceeding." CP at 30. Moreno indicated that she did not intend to elicit any testimony from the State's witnesses.

After noting Moreno's objection, the judge resumed: "Trooper McManus, would you tell the court what happened?" CP at 30. Trooper McManus's testimony matched almost word for word the form statement she filled in on the back of the notice of infraction. She recounted where and

when Moreno was stopped, how she used the radar to check Moreno's speed, how the radar was in working condition and had been tested and so forth. When she reached the end of the printed paragraph, Moreno objected on the ground that she was neither testifying from personal knowledge nor using the report to refresh her recollection. The court responded:

Judge: (Undistinguishable) . . . We do allow them to read their affidavit. If you don't want her to read it, . . . she can highlight it to the court. But her statement will be admitted. Trooper McManus, do not read it completely, just give us . . .

Trooper: Yes Ma'am. . . .

CP at 31. Picking up where she left off, Trooper McManus summarized the rest of her written statement. Moreno did not cross-examine her, refusing to participate.

The court turned to the radar expert. The judge said: "Mr. Hannah, you were subpoenaed. Why don't you give the court your [credentials] and testify as to the condition of the radar." CP at 31. Moreno again objected, the court again overruled her, and the radar expert testified about his expertise and the radar. Moreno did not cross-examine the radar expert either. After Moreno again stated her objection to the State's failure to present a case, the court found the infraction had been committed and fined her $45. Moreno appealed to the superior court, which affirmed. The Court of Appeals transferred her motion for discretionary review to this court because it lacks jurisdiction.

Moreno faults the state for not appearing at the hearing and for not providing a witness list, thus failing to prosecute the case. Her more significant claim is that in admitting the testimonial evidence in this case, the district court violated the separation of powers doctrine and due process. We granted Moreno's petition for review and directed the parties to address the preliminary question of whether this court has jurisdiction.

504

## ISSUES

(1) Does this court have jurisdiction?

(2) Did the district court violate the separation of powers doctrine?

(3) Did the district court violate due process?

## ANALYSIS

### 1. Jurisdiction

■ The jurisdiction of the Supreme Court is set down in the state constitution:

> The supreme court shall have . . . appellate jurisdiction in all actions and proceedings, excepting that its appellate jurisdiction shall not extend to civil actions at law for the recovery of money or personal property when the original amount in controversy, or the value of the property does not exceed the sum of two hundred dollars ($200) unless the action involves the legality of a tax, impost, assessment, toll, municipal fine, or the validity of a statute.

WASH. CONST. art. IV, § 4. A violation of Title 46 RCW is a civil traffic infraction (unless designated a crime by RCW 46.63.020). *City of Bremerton v. Spears*, 134 Wn.2d 141, 150, 949 P.2d 347 (1998). The original amount in controversy in this case was $90. We have jurisdiction only if one of the exceptions to the $200 amount in controversy requirement applies.

The procedure for traffic infraction hearings is established by statute, RCW 46.63.080, Hearings—Rules of procedure—Counsel. One of the legislature's purposes in decriminalizing traffic violations was to create an "expeditious system for the disposition of traffic infractions." RCW 46.63.010. In hopes of accomplishing this purpose, the legislature provided for hearings without prosecutors:

> The attorney representing the state, county, city, or town may appear in any proceedings under this chapter but need not

appear, notwithstanding any statute or rule of court to the contrary.

RCW 46.63.080(3). Moreno asserts that this aspect of the procedure established for traffic infraction hearings violates the constitutional separation of powers doctrine and the due process clause. Thus, to the extent Moreno raises constitutional arguments, she challenges "the validity of a statute" under article IV, section 4 of the state constitution. We therefore have jurisdiction over her constitutional claims.[1]

## 2. Separation of Powers

██ The doctrine of separation of powers comes from the constitutional distribution of the government's authority into three branches. The state constitution divides the "political power" that is "inherent in the people," article I, section 1, into "legislative authority," article II, section 1, "executive power," article III, section 2, and "judicial power," article IV, section 1. Each branch of government wields only the power it is given. The purpose of the doctrine is to prevent one branch of government from aggrandizing itself or encroaching upon the "fundamental functions" of another. *Carrick v. Locke*, 125 Wn.2d 129, 135, 882 P.2d 173 (1994). But because the three branches are not "hermetically sealed," the separation of powers doctrine allows the government a measure of "flexibility and practicality." *Id.*

██ The test for determining whether separation of powers is violated reflects the concern for the independence of each branch as well as the fact that some overlap is allowed:

"The question to be asked is not whether two branches of government engage in coinciding activities, but rather whether

---

[1] The amount in controversy requirement may be anachronistic today. This court, as many high courts, has the discretion to hear cases raising important issues. Small cases can raise big issues too. *See Thompson v. City of Louisville*, 362 U.S. 199, 203, 80 S. Ct. 624, 4 L. Ed. 2d 654 (1960) (*certiorari* to the Police Court of Louisville, Kentucky).

the activity of one branch threatens the independence or integrity or invades the prerogatives of another."

*Id.* at 135 (quoting *Zylstra v. Piva*, 85 Wn.2d 743, 750, 539 P.2d 823 (1975)). The United States Supreme Court has decried two dangers to judicial independence: "first, that the Judicial Branch neither be assigned nor allowed 'tasks that are more properly accomplished by [other] branches,' *Morrison v. Olson*, 487 U.S. [654,] 680-681, [108 S. Ct. 2597, 101 L. Ed. 2d 569 (1988)] and, second, that no provision of law 'impermissibly threatens the institutional integrity of the Judicial Branch.' *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. [833,] 851[, 106 S. Ct. 3245, 92 L. Ed. 2d 675 (1986)]." *Mistretta v. United States*, 488 U.S. 361, 383, 109 S. Ct. 647, 102 L. Ed. 2d 714 (1989), *quoted in Carrick*, 125 Wn.2d at 136. The question is whether the district court invaded the prerogatives of the executive branch, and assumed a task more properly accomplished by it, by calling and questioning Trooper McManus and the radar expert.

■ A judge does not violate separation of powers merely by calling and questioning a witness. The evidence rules, which apply to infraction hearings under IRLJ 3.3(c), permit both "where necessary in the interests of justice." ER 614(a), (b). Washington recognized this authority before adoption of the rules. ROBERT H. ARONSON, THE LAW OF EVIDENCE IN WASHINGTON 614-2 (3d ed. 1998). The executive branch still polices the highways and gathers the evidence of an infraction. In asking for both parties' evidence, listening to all of it, and deciding whether the infraction was committed, the district court was within the constitutional confines of the judicial power.

### 3. Due Process

■ Moreno next contends that the procedure employed by the district court violated the fourteenth amendment to the United States Constitution. She relies on that aspect of the due process clause guaranteeing her a fair tribunal.

A fair trial in a fair tribunal is a basic requirement of due process. . . . "[E]very procedure which would offer a possible temptation to the average man as a judge [to forget the burden of proof required to convict the defendant, or which might lead him] not to hold the balance nice, clear and true between the State and the accused, denies the latter due process of law." *Tumey v. Ohio*, 273 U.S. 510, 532[, 47 S. Ct. 437, 71 L. Ed. 749 (1927)]. Such a stringent rule may sometimes bar trial by judges who have no actual bias and who would do their very best to weigh the scales of justice equally between contending parties. But to perform its high function in the best way "justice must satisfy the appearance of justice." *Offutt v. United States*, 348 U.S. 11, 14[, 75 S. Ct. 11, 99 L. Ed. 11 (1954)].

*In re Murchison*, 349 U.S. 133, 136, 75 S. Ct. 623, 99 L. Ed. 942 (1955). Thus it may be unfair to a litigant for a judge to don executive and judicial hats at the same time.[2]

Due process will not tolerate a judge with a financial interest in the case. In *Tumey*, 273 U.S. at 523, the Court held a criminal defendant could not be tried by a judge with "a direct, personal, substantial, pecuniary interest in reaching a conclusion against him in his case." In *Ward v. Village of Monroeville*, 409 U.S. 57, 93 S. Ct. 80, 34 L. Ed. 2d 267 (1972), the Court held it violated due process for the mayor of Monroeville, Ohio, to preside over traffic court where a major part of village income came from fines imposed by the mayor's court. The mayor's responsibility for village finances created "a 'situation in which an official perforce occupies two practically and seriously inconsistent positions, one partisan and the other judicial.' " *Id.* at 60 (quoting *Tumey*, 273 U.S. at 534).

The union of investigative and judicial duties may also result in an unfair tribunal. In *Murchison*, the Court held that a Michigan procedure violated due process in which a judge, acting as a "one-man grand jury," both gathered evidence of criminal contempt against defendants in a

---

[2] The idea of an independent tribunal is far more ancient than the Due Process Clause. In Aeschylus' *Eumenides* (458 B.C.) Apollo directs Orestes, pursued by the Furies for killing his mother, to go to Athens "κακει δικαστας τωνδε . . . ευρησομεν" ("and there find judges of the matter"). *Eum.* 81-82. Orestes was later acquitted.

secret proceeding, and then used it to prosecute them. In addition to requiring the judge to try the accuracy of his own investigation, placing the judge in an adversary position, the procedure denied the defendant the opportunity to cross-examine the judge's impressions from the secret investigation. 349 U.S. at 138-39.

■ But the high Court has rejected "[t]he contention that the combination of investigative and adjudicative functions *necessarily* creates an unconstitutional risk of bias in administrative adjudication." *Withrow v. Larkin*, 421 U.S. 35, 47, 95 S. Ct. 1456, 43 L. Ed. 2d 712 (1975) (emphasis added). In *Withrow*, the Court upheld a Wisconsin practice in which the state's medical examining board both investigated misconduct charges against licensed physicians and ruled on them. The court distinguished *Murchison* because there was "[n]o specific foundation . . . for suspecting that the Board had been prejudiced." *Id.* at 55. *Withrow* stands for the proposition "[t]hat the combination of investigative and adjudicative functions does not, without more, constitute a due process violation." *Id.* at 58.

*Withrow*, acknowledging that allowing investigators to become adjudicators is a substantial issue, implied that due process leaves legislators the freedom to address it by degrees. The court said: "Congress has addressed the issue in several different ways, providing for varying degrees of separation from complete separation of functions to virtually none at all." *Id.* at 51-52. For example, in *Wong Yang Sung v. McGrath*, 339 U.S. 33, 50-52, 70 S. Ct. 445, 94 L. Ed. 616 (1950), *superseded by statute as stated in Ardestani v. I.N.S.*, 502 U.S. 129, 133, 112 S. Ct. 515, 116 L. Ed. 2d 496 (1991), the Court held that deportation hearings were subject to the federal Administrative Procedure Act, and that prosecutorial and adjudicative duties could not be entrusted to the same officers. The Court implied a constitutional infirmity in the deportation procedure, stating that to construe the Immigration Act as being beyond the reach of the Administrative Procedure Act might "bring it into constitutional jeopardy" because, "[w]hen the Constitution

requires a hearing, it requires a fair one." *Id*. at 50. But relief from the many "evils" in the accumulation of powers in administrative agencies came not from the Court's due process jurisprudence but from years of study by Congress and the president. *Id*. at 37-45.

■ United States Supreme Court precedent is against Moreno. The district court judge had no pecuniary interest in the outcome of the case and no investigatory role placed her in an adversary position. The only unfairness Moreno identifies is that the judge had to rule on objections to the judge's own questioning. But this practice is contemplated by both federal and state evidence rules. *See* FED. R. EVID. 614(c); ER 614(c). Moreno's claim rests not on the ground that the judge took the prosecution's side, but on the technical ground of who uttered the words calling witnesses to the stand. Not only is this far short of the conduct condemned in *Murchison*, it is far short of the combination of investigative and adjudicatory roles upheld in *Withrow*.

The Supreme Court of California approved an identical traffic hearing in *People v. Carlucci*, 23 Cal. 3d 249, 256, 590 P.2d 15, 152 Cal. Rptr. 439 (1979). The two defendants in *Carlucci* were cited for speeding and had their cases adjudicated without prosecutors. In each case the judge called the citing officer to the stand, permitted the defendant to examine the officer, and questioned the defendant. Approving the trial court's right to call and question witnesses, the court said it is "the duty of a trial judge to see that the evidence is fully developed before the trier of fact and to assure that ambiguities and conflicts in the evidence are resolved insofar as possible." *Id*. at 255. But the court cautioned, "the trial court must not undertake the role of either prosecutor or defense counsel." *Id*. at 258. In holding that the hearings satisfied due process, the *Carlucci* court drew a distinction between a judge who elicits the parties' evidence neutrally and one who advocates a position. *See also State v. Avena*, 281 N.J. Super. 327, 339, 657 A.2d 883 (App. Div. 1995).

We addressed a related issue in *City of Bellevue v. Hellenthal*, 144 Wn.2d 425, 436, 28 P.3d 744 (2001). In that case we held that a district court was permitted to admit documentary evidence authenticating the accuracy of a speed measuring device under IRLJ 6.6 without a prosecuting attorney to offer it. *Id.* at 435. We distinguished several federal and state cases holding that due process forbids a judge from acting as a prosecutor. We said, "[t]he cases cited by respondents relating to fairness primarily are cases where the court *affirmatively called or examined witnesses on behalf of a party to the litigation* or literally acted as both judge and prosecutor." *Id.* at 436 (emphasis added). Moreno particularly relies on the emphasized language in arguing that *Hellenthal* impliedly prohibited the procedure employed in her case. But a closer reading of the case law than was necessary in *Hellenthal* does not bear this out.

In *Figueroa Ruiz v. Delgado*, 359 F.2d 718, 720 (1st Cir. 1966) the court struck down a Puerto Rico procedure in which the trial court judge served as prosecutor in petty criminal cases. Under the statutory procedure,

> of the Commonwealth's witnesses take the stand at the request the trial judge, and are interrogated by him. . . . Redirect, limited to what was brought out on cross, is conducted by the judge. Thereafter, if the defendant has witnesses, or chooses to take the stand, . . . [c]ross-examination is conducted by the judge, . . . . The judge can call prosecution witnesses for the purpose of rebuttal. Thereafter, there being no jury, the judge decides the case.

*Id.* at 719-20 (footnote omitted). In this situation "the judge must alternate roles in rapid succession, or even assume both at once." *Id.* at 720. The judge had to ask a question in the government's interest, and then listen to the answer as finder of fact; then, during the defense's case, the judge had to prepare cross-examination. The judge's participation was "continuous throughout the trial [and] . . . he is primarily motivated to speak only on one side." *Id.*

A judge improperly acted as a prosecutor in *People v. Martinez*, 185 Colo. 187, 523 P.2d 120 (1974), in which a prosecutor failed to appear at a suppression hearing:

> The court not only moved *sua sponte* for the admission of the transcript of the preliminary hearing into evidence, but called witnesses for the People, examined them and cross-examined defense witnesses. He made *sua sponte* objections to defense counsel's questions and ruled on objections made to his own questions—many leading ones.

185 Colo. at 189. Again, in *People v. Cofield*, 9 Ill. App. 3d 1048, 293 N.E.2d 692 (1973), the court took too great a role in a child abuse prosecution. When the 13-year-old victim testified differently from her police statement, the judge called the investigating officer to the stand to present her prior statement, and said:

> "Why are you lying to me now?" He reminded her that she was under oath and again asked her if the defendant touched her. . . . he further stated that he would "send her to the Audy Home and take her in custody" if she did not tell the truth. Deborah answered that defendant did grab her.

*Id.* at 1049-50. *See also Giles v. City of Prattville*, 556 F. Supp. 612 (M.D. Ala. 1983); *Wounded Knee v. Andera*, 416 F. Supp. 1236 (D.S.D. 1976).

We think these cases are distinguishable from Moreno's. The Puerto Rico procedure in *Figueroa Ruiz* required the judge to advocate the state's position: choosing witnesses to call, developing the state's case by redirect examination and rebuttal witnesses, and undermining the defense by cross-examination. In *Martinez* and *Cofield* the trial judges advocated the states' cases by objecting to defense counsel's questions, cross-examining defense witnesses, and impeaching a witness testifying favorably to the defense. These activities, undertaken in addition to calling witnesses and asking neutral questions, turn a neutral judge into the state's advocate. But in this case, the judge heard from the state's witnesses who were present at Moreno's request; she made no effort to enhance the testimony they

gave; nor did she prevent Moreno from presenting a case. Where a traffic court judge invites the State's witnesses to say "what happened," without more, she does not violate due process.

In determining that the fourteenth amendment to the United States Constitution does not require a prosecutor to be present at a traffic infraction hearing, we do not, of course, prevent the legislature from so providing. There may be good reason to: "[t]raffic court is often the only exposure Washington citizens will have to the judicial branch. For these citizens, traffic court forms the basis for their understanding of due process." *Hellenthal*, 144 Wn.2d at 437 (Johnson, J., dissenting). But as long as constitutional standards are maintained, it is up to the legislature to decide when "the price for greater fairness" is too high. *Wong Yang Sung*, 339 U.S. at 46-47.

## CONCLUSION

We conclude that the district court did not violate the separation of powers doctrine or due process by adjudicating Moreno's traffic infraction hearing without a prosecutor present. The judgment of the district court is affirmed.

ALEXANDER, C.J., and SMITH, MADSEN, IRELAND, and BRIDGE, JJ., concur.

JOHNSON, J. (dissenting) — The majority opinion attempts to draw a fine line between a judge actively prosecuting a case and merely calling witnesses to elicit information. But this distinction fails to protect or recognize the importance of the appearance of fairness principle and jeopardizes fundamental principles of procedural due process to which every party before our courts is constitutionally entitled. I therefore dissent.

Judges are required to comply with the canons of judicial ethics. Our state's Code of Judicial Conduct (CJC) requires judicial fairness in order to preserve procedural due process

and public confidence in our courts. The Preamble begins, "[o]ur legal system is based on the principle that an independent, fair and competent judiciary will interpret and apply the laws that govern us." CJC, Preamble. This principle is so integral to our adversarial system that the Code of Judicial Conduct repeats it in the first Canon: "An independent and honorable judiciary is indispensable to justice in our society." CJC, Canon 1.

Our cases also require adherence to these principles. Judges must not only be impartial, but also appear impartial because judicial fairness is violated when the appearance of fairness is ignored. *State ex rel. McFerran v. Justice Court*, 32 Wn.2d 544, 549, 202 P.2d 927 (1949) (" 'The principle of impartiality, disinterestedness, and fairness on the part of the judge is as old as the history of courts' " (quoting *State ex rel. Barnard v. Bd. of Educ.*, 19 Wash. 8, 17, 52 P. 317, 320 (1898))); *Diimmel v. Campbell*, 68 Wn.2d 697, 699, 414 P.2d 1022 (1966) ("It is incumbent upon members of the judiciary to avoid even a cause for suspicion of irregularity in the discharge of their duties"). This is more than idealistic sentiment. "Deference to the judgments and rulings of courts depends upon public confidence in the integrity and independence of the judges." CJC, Canon 1 cmt.

These bedrock principles of procedural due process are also set forth in cases from the United States Supreme Court. The majority would dismiss the United States Supreme Court's articulation of these principles. But when the high Court held, " '[e]*very procedure* which would offer a possible temptation to the average man as a judge . . . not to hold the balance nice, clear and true between the State and the accused, denies the latter due process of law,' " it did not intend its holding to be limited to the facts of that case. *In re Murchison*, 349 U.S. 133, 136, 75 S. Ct. 623, 99 L. Ed. 942 (1955) (emphasis added) (quoting *Tumey v. Ohio*, 273 U.S. 510, 532, 47 S. Ct. 437, 444, 71 L. Ed. 749 (1927)).[3]

---

[3] The majority attempts to temper this language by citing to a later United States Supreme Court case which held an administrative agency may both

In our adversarial system, when the only advocate for the State in the courtroom is the judge, the appearance of fairness is violated. As stated in *City of Bellevue v. Hellenthal*, "[t]he appearance of justice is lost, even where a just result is achieved, when the State's only representative at a contested traffic hearing is the judge who moves evidence into the record on the State's behalf." 144 Wn.2d 425, 437, 28 P.3d 744 (2001) (Johnson, J., dissenting). This case presents a situation that is far beyond what occurred in *Hellenthal*. That case involved a judge admitting into evidence a certificate by a radar expert, which was authorized by court rule. *Hellenthal*, 144 Wn.2d at 434.

Here, the court's behavior is more egregious than that in *Hellenthal* because the judge actively solicited information from witnesses unfavorable to Moreno. Moreno made repeated motions that the case could not go forward because the prosecutor was not present. The judge responded, "[t]he court is not going to dismiss it because the state allegedly is not here. The state and the prosecutor around here is [sic] never here." Clerk's Papers at 28-29. Moreno further argued the judge would have to rule on objections to her own questions of witnesses. Moreno emphasized the State could not meet its burden to prove the case by a preponderance if no one was there to argue for it. Moreno had not received the State's witness list after repeated requests for it. The judge responded, "we do not have that here." Clerk's Papers at 29. The judge then asked witnesses unfavorable to Moreno to testify over Moreno's specific objections that the judge was acting "as a lawyer and judge in the same proceeding." Clerk's Papers at 30.

The judge crossed the line from impartiality to advocacy in this case. The State did not subpoena any witnesses. Moreno never called any witnesses and objected to the witnesses called. Because it was the judge who called the

---

investigate and adjudicate regulatory violations. Majority at 508 (citing *Withrow v. Larkin*, 421 U.S. 35, 51-52, 55, 58, 95 S. Ct. 1456, 43 L. Ed. 2d 712 (1975)). But this is not the issue before us. That case does not address whether a court may both call a witness in the absence of a prosecuting attorney and then rule on its ability to do so.

witnesses and questioned them regarding facts unfavorable to Moreno, the only advocate for the State was the judge. This conduct unquestionably violated the appearance of a fair and independent judiciary and Moreno's right to procedural due process.

Whether we can determine in retrospect whether a trial court merely elicited unfavorable information or actively prosecuted the case, is not the issue. As our judicial canons, our cases, and those cases of the United States Supreme Court mandate, the right to due process is violated when, as occurred here, the appearance of fairness is violated. I therefore dissent.

SANDERS and CHAMBERS, JJ., concur with JOHNSON, J.