# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| In the Matter of the Personal Restraint of: | No. 58671-1-II |
|---|---|
| JASON CRAIG WILKS, | |
| Petitioner. | UNPUBLISHED OPINION |

MAXA, J. – Jason Wilks appeals the superior court's findings of fact following a reference hearing that this court ordered. After this court affirmed his convictions on direct appeal, Wilks filed a timely personal restraint petition (PRP). He argued among other things that he received ineffective assistance of counsel because his defense counsel failed to fully advise him of the sentencing consequences if he was convicted.

In an unpublished opinion, this court denied most of Wilks's PRP but remanded to the trial court to make factual determinations and decide the merits of Wilks's ineffective assistance of counsel claim. This issue on remand was narrow:

> We remand for an evidentiary hearing and determination on the merits on the issue of whether Wilks' defense counsel failed to advise him of the sentencing consequences during plea negotiations, including the possibility of consecutive sentences, sentencing enhancements, and exceptional sentences.

*In re Pers. Restraint of Wilks*, No. 55357-1-II, slip op. at 24 (Wash. Ct. App. Oct. 18, 2022)

(unpublished), https://www.courts.wa.gov/opinions/pdf/D2%2055357-1-

II%20Unpublished%Opinion.pdf.

On remand, the superior court issued written findings of fact but no conclusions of law. The court found that Wilks "was informed about the potential liabilities and implications if he were to be convicted at trial," and that Wilks "was informed that he was facing consequences including up to life imprisonment and including exceptional and consecutive sentences. Clerk's Papers (CP) at 86. Both Wilks and the State appear to construe the superior court's findings of fact as a denial of Wilks's PRP on the merits.

We hold that (1) substantial evidence supports the superior court's relevant factual findings; (2) based on those findings, Wilks's ineffective assistance of counsel claim fails; and (3) the superior court did not violate Wilks's due process rights in questioning him during the reference hearing. Accordingly, we deny the remainder of Wilks's PRP.[1]

## FACTS

In December 2014, the State charged Wilks with second degree child rape, two counts of third degree child rape, second degree child molestation, two counts of third degree child molestation, two counts of unlawful delivery of a controlled substance to a minor, and three counts of furnishing liquor to a minor. The charges involved three victims. The information alleged that the two unlawful delivery of a controlled substance to a minor charges involved sexual motivation, which would add additional time to the presumptive sentence.

*Background*

Shortly after he was charged, Wilks retained attorney Timothy Healy to defend the charges against him. Wilks paid him a $7,500 retainer.

---

[1] This case originally was captioned State v. Jason Craig Wilks. On our own motion, we have changed the caption to In re Personal Restraint of Jason Craig Wilks to reflect the fact that this case is a continuation of Wilks's personal restraint petition, No. 55357-1-II, following the superior court's reference hearing.

Two years later, a dispute arose between Wilks and Healy regarding additional attorney fees to take the case to trial. Healy then moved to withdraw as Wilks's attorney.[2] Wilks opposed the motion. The trial court denied the motion because of the significant amount of work Healy had performed on the case. Although the record is unclear, it appears that another attorney from Healy's law firm started representing Wilks. The court then ordered Healy to show cause why the court should not hold Healy in contempt for failing to follow the trial court's order regarding legal representation. The court chose not to hold Healy in contempt but ordered him to be personally responsible for the case.

Wilks was re-arraigned shortly before trial. The amended information added charges of third degree child rape, third degree child molestation, unlawful delivery of a controlled substance to a minor, and two counts of furnishing liquor to a minor involving two new victims. The information alleged that the unlawful delivery of a controlled substance to a minor charge and the furnishing liquor to a minor charges involved sexual motivation, which would add additional time to the presumptive sentence.

At the re-arraignment, the prosecutor addressed whether Healy had conveyed plea offers to Wilks. Healy declined to discuss his communications with his client but stated that Wilks "had knowledge of the Amended Information prior to coming into court this afternoon, has reviewed it, and Mr. Wilks has elected to proceed to trial." Report of Proceedings (RP) (Aug. 26, 2016) at 4. The prosecutor put on the record that Wilks could go to prison for life if convicted, and that the plea offer was for a determinate sentence. Healy responded, "I am cognizant of the maximum penalty. I am cognizant of the standard range that is potentially

---

[2] A commissioner of this court granted a motion to transfer the transcripts of Wilks's original trial to the record of this reference hearing appeal.

involved with respect to Mr. Wilks. And I'm cognizant of what the offer is and the fact that the offer did involve a determinate sentence." RP (Aug. 26, 2016) at 6. Wilks was present when these statements were made.

The jury convicted Wilks of one count of third degree child rape, one count of second degree child molestation, five counts of third degree child molestation, three counts of unlawful delivery of a controlled substance to a minor, and five counts of furnishing liquor to a minor. For the convictions for unlawful delivery of a controlled substance to a minor and one count of furnishing liquor to a minor, the jury found that Wilks acted with a sexual motivation. The trial court imposed an exceptional sentence of 280 months in confinement, which involved running certain sentences consecutively and included mandatory sentence enhancements for the sexual motivation findings.

*Appeal and PRP*

This court affirmed Wilks's convictions on direct appeal in 2019. *State v. Wilks*, No. 50287-9-II (Wash. Ct. App. Apr. 23, 2019) (unpublished), https://www.courts.wa.gov/opinions/pdf/D2%2050287-9-II%20Unpublished%20Opinion.pdf.

In 2020, Wilks filed a timely PRP. *See Wilks*, No.55357-1-II. He argued that he was denied effective assistance of counsel regarding communication of plea negotiations, his counsel's failure to interview family members or adequately prepare for trial, counsel's failure to investigate impeachment evidence, and counsel's failure to seek funds to pay for an expert witness. *Id.* at 1. He also contested the sufficiency of the evidence for his convictions of unlawful delivery of a controlled substance to a minor. *Id*.

This court denied the PRP in part and remanded the PRP in part. *Id.* at 1-2. The court denied almost all of Wilks's PRP claims, including Wilks's claim that the plea offer never was

communicated to him. *Id.* at 14. The court concluded that the record did not support Wilks's claim because he was present at the re-arraignment hearing where the prosecutor and the trial court both discussed the plea offer. *Id.* The court reemphasized that Wilson also admitted that he received the plea offer on the morning of trial. *Id.*

The only PRP claim that the court did not deny was Wilks's claim that his defense counsel was ineffective with respect to communicating the possible sentencing consequences associated with going to trial. *Id.* at 1-2. The court determined that Wilks had "made a prima facie showing that a rational person in his situation would more likely than not have accepted the plea offer had he been fully informed of the potential sentencing consequences following conviction after trial." *Id.* at 16.

The court then stated,

> [W]e cannot resolve, on this record, whether defense counsel actually *informed Wilks* about the specific sentencing consequences he faced after trial, including the length of the enhancements, the fact that they must be served consecutively to the base sentence as well as to each other, and the possibility of an exceptional sentence under RCW 9.94A.535(2)(c) based on Wilks' potential for a very high offender score.

*Id.* at 17. Accordingly, this court remanded "this particular claim of error to the superior court for resolution through an evidentiary hearing and a determination on the merits." *Id.* The court directed the superior court to " 'enter findings of fact and conclusions of law and an order deciding the petition.' " *Id.* (quoting RAP 16.12).

In its conclusion, the court stated,

> We remand for an evidentiary hearing and determination on the merits on the issue of whether Wilks' defense counsel failed to advise him of the sentencing consequences during plea negotiations, including the possibility of consecutive sentences, sentencing enhancements, and exceptional sentences.

*Id.* at 24.

*Reference Hearing*

The superior court held a reference hearing in May 2023. First, Wilks's wife testified. She stated that she attended two meetings between Wilks and Healy before trial, but she never heard any discussion about plea negotiations. She asked Healy what Wilks's maximum sentence would be, and he told her 10 years. She was not told about an exceptional sentence until after the verdict. Wilks had never said anything to her about an exceptional sentence before the verdict. If she had known that Wilks could be sentenced to more than 10 years, she would have told him to take a plea deal.

Ms. Wilks testified that they paid for a polygraph test because the results were supposed to be used in plea negotiations. However, she had no knowledge of any negotiations.

Healy testified regarding his representation of Wilks. He stated that he made efforts to resolve Wilks's case before trial but could not reach a plea agreement.

Healy discussed his notes from a meeting with Wilks that occurred the morning of the re-arraignment hearing. The notes were both to himself and regarding conversations with Wilks. His notes stated that the highest sentence range was 210 to 280 months, that Wilks faced 48 months of sexual motivation sentence enhancements, and that the court could impose an exceptional sentence. Healy testified that he talked with Wilks about this information; the note related to his conversation with Wilks. Healy stated, "I do recall meeting with him that morning in my office and relaying this information to him." RP (May 1, 2023) at 31. The note further stated, "Client prev turned down offer, went over again. Re exposure, offer, and exposure re-arraignment. Recommended client accept offer re to much risk." Ex.1.

Healy testified that he told Wilks that he was looking at life in prison. Healy stated that although he did not recall exactly what was said, his recollection was that he advised Wilks

regarding an exceptional sentence. Healy talked to Wilks about an exceptional sentence because Wilks was facing an exceptional sentence if he was convicted. Healy also stated that although he did not specifically remember, he believed that he talked to Wilks about enhancements because his "custom and habit" was to discuss issues regarding "consecutive or concurrent or enhancements." RP (May 1, 2023) at 40. Healy stated that his notes reflected that he talked to Wilks about both an exceptional sentence and enhancements. And Healy's habit and custom was to discuss the maximum penalty with his clients.

Healy then expressly confirmed that he talked to Wilks about an exceptional sentence, the potential for an enhancement, and the possibility of consecutive sentences.

Healy also referenced an email containing a plea agreement offer from the State that would expire at the re-arraignment hearing. Healy testified that although he could not recall specifically how Wilks responded to the offer, his habit and custom would have been to have communicated with his client. Healy stated, "I recall the substance of the case because Mr. Wilks was looking at life [in prison], and I thought the offer was determinate, and it was my recommendation that he accept that offer, and so, you know, I just felt there was too much exposure, and it was a mutli-victim child sex case." RP (May 1, 2023) at 36.

Wilks testified on his behalf. He stated that about six months before trial, he and Healy had a dispute about how much Healy's fees would be to take his case to trial. Healy then moved to withdraw from the case. After the motion to withdraw was denied, Wilks stated that he and Healy never spoke again until the day of the re-arraignment hearing. He testified that he never had a conversation with Wilks regarding plea negotiations or potential exceptional sentences or enhancements. However, he acknowledged that he submitted to two polygraph examinations, and said they were to be used for plea negotiations.

Wilks testified that if he had known that he was looking at a sentence of 280 months, he would have taken a plea deal if given the opportunity.

On cross-examination, Wilks stated that he remembered being present at the re-arraignment hearing. But Wilks did not recall the judge talking about a plea offer and testified that no offer had reached him. And he did not recall the prosecutor referring to a plea offer or Healy acknowledging that the plea offer was for a determinate sentence. He did recall hearing the word "offer." RP (May 1, 2023) at 63.

Before any redirect, the superior court asked Wilks a number of questions. The court questioned Wilks about the number of meetings he had with Healy and the nature of those meetings. The court then asked if Wilks understood the nature of his offenses:

> Q: And the original charges on December 9th, 2014, that were filed included rape of a child in the second degree, correct?
> A: I would believe so probably, yes, Your Honor.
> Q: And you were informed that was a Class A sex offense.
> A: I don't remember if I was told exactly what it was.
> Q: So your testimony is your attorney never told you you were facing a Class A sex offense when you were initially arraigned?
> A: I don't believe so, Your Honor, no. I believe it was just these new charges. I don't believe we went into detail.
> Q: Did he ever tell you what the potential range for a Class A sex offense was?
> A: I do believe that was the ten year, the worst crime, I believe, maximum.
> . . . .
> Q: So you were not explained about the charges accumulating points together and the maximum total?
> A: No, Your Honor. I didn't find out about that until after I was convicted.
> Q: So you had no understanding that the points would count against each other, and your range was never, in fact, only ten years?
> A: No, Your Honor.
> Q: Not at arraignment, not during the pendency of the case, at no point did you understand you were facing more than ten years?
> A: No, Your Honor, not at all.

RP (May 1, 2023) at 67-68.

The court then asked Wilks about his financial dispute with Healy. Wilks explained that he initially paid Healy $7,500 and was told that it would cost another $30,000 to go to trial. Wilks confirmed that he never paid Healy any additional money.

The court asked Wilks about the re-arraignment.

Q: So you were re-arraigned on this particular matter on 8/26; is that correct?
A: Sounds accurate, Your Honor.
Q: And you were still being re-arraigned on the charge of rape of a child in the second degree, correct?
A: I believe that was still one of the charges, yes.
Q: And that was during that hearing that specifically the [prosecutor] put on the record the fact he had made you an offer that was determinate and it was being withdrawn at that point, correct?
A: I don't recall what was being talked about but that's what the records say, Your Honor.
Q: Did you have an understanding of determinate as opposed to what indeterminate was?
A: I had no idea, Your Honor, no.
Q: So you're saying at no point during your communications with Mr. Healy were you ever told about Class A sex offenses and indeterminate versus determinate?
A: No, Your Honor.

RP (May 1, 2023) at 72. Wilks stated that after the hearing Healy refused to talk with him.

The court next asked Wilks about his opposition to Healy's motion to withdraw. Wilks confirmed that he did not tell the trial court about the breakdown in communication.

Finally, the court addressed the State's plea offer.

Q: So it's your testimony you never received the offer that was originally conveyed prior to that arraignment on 8/26?
A: No. The offer through the email, Your Honor, was never relayed to me. My first knowledge of that email was just this last year or so, and it was included in my PRP.

RP (May 1, 2023) at 74.

During argument, the superior court asked about Wilks's sophistication with the court system. The court noted that Wilks moved pro se to have Healy removed from his case, and understood the nature of the charges against him including the sentence.

9

After hearing the testimony and argument, the superior court took the matter under advisement.

*Findings of Fact*

The superior court subsequently entered the following findings of fact:

• Wilks and Healy had a dispute about proper attorney fees.

• Wilks moved for contempt sanctions against Healy because he designated another attorney as the attorney on the case contrary to the trial court's prior order.

• "[I]t was placed on the record that the determinative offer that had been extended by the prosecutor, Mr. John Cummings, was being withdrawn and that the new charges carried the potential for consecutive and exceptional sentence upward." CP at 84-85.

• Healy made a note that he communicated the offer to Wilks and Wilks rejected the offer.

• Healy's testimony was "credible, although vague" about his communication regarding plea discussions, and that "credible evidence establishes that Mr. Healy conveyed the determinative offer to Mr. Wilks and that Mr. Wilks rejected the offer." CP at 85.

• Wilks's testimony was not supported by other evidence presented, and though it did not make a finding regarding Wilks's credibility, it did "note that Mr. Wilks has specific motivation to indicate that no offer was presented." CP at 85-86.

The superior court's final findings of fact stated,

24. The Court finds based upon the totality of evidence and testimony presented, that a clear and convincing standard is met that the defendant was informed about the potential liabilities and implications if he were to be convicted at trial and the defense failed to establish any reliable evidence that the offer was not meaningfully conveyed by defense counsel.
25. The Court finds based upon the evidence and testimony presented, the defendant was informed that he was facing consequences including up to life imprisonment and including exceptional and consecutive sentence.
26. The Court finds based upon the evidence that was presented, the weight of the evidence indicates the defendant declined such offers and chose to pursue his right to a trial by jury while maintaining his innocence.

CP at 86-87.

10

The superior court later entered an order adopting its findings of fact as a matter of law. The court stated that "no further evidentiary determinations can be made as a matter of law" and referred the matter back to the Court of Appeals. CP at 114.

ANALYSIS

A.    LEGAL PRINCIPLES

To prevail in a PRP, the petitioner must establish by a preponderance of the evidence (1) a constitutional error that resulted in actual and substantial prejudice or (2) a fundamental defect of a nonconstitutional nature that inherently resulted in a complete miscarriage of justice. *In re Pers. Restraint of Meredith*, 191 Wn.2d 300, 306, 422 P.3d 458 (2018). Establishing "actual and substantial prejudice" means more than merely showing a possibility of prejudice; the petitioner must establish that if the alleged error had not occurred, the outcome more likely than not would have been different. *In re Pers. Restraint of Meippen*, 193 Wn.2d 310, 315-16, 440 P.3d 978 (2019).

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee criminal defendants the right to effective assistance of counsel. *State v. Vazquez*, 198 Wn.2d 239, 247, 494 P.3d 424 (2021). To prevail on an ineffective assistance of counsel claim, a petitioner must show both that defense counsel's performance was deficient and that the deficient performance was prejudicial. *Id.* at 247-48.

Counsel's representation is deficient if, after considering all the circumstances, it falls below an objective standard of reasonableness. *Id.* To rebut the presumption that counsel's performance was effective, a petitioner bears the burden of establishing the absence of any legitimate strategic or tactical reason explaining counsel's conduct. *Id.* at 248.

11

A petitioner's right to effective assistance of counsel extends to plea negotiations. *State v. Sprague*, 16 Wn. App. 2d 213, 237, 480 P.3d 471 (2021). This obligation includes communicating all offers. *State v. Edwards*, 171 Wn. App. 379, 394, 294 P.3d 708 (2012). The right to effective assistance of counsel also involves " 'assisting the defendant in making an informed decision as to whether to plead guilty or to proceed to trial.' " *State v. Estes*, 188 Wn.2d 450, 464, 395 P.3d 1045 (2017) (quoting *State v. A.N.J.*, 168 Wn.2d 91, 111, 225 P.3d 956 (2010)). "Counsel must, at a minimum 'reasonably evaluate the evidence against the accused and the likelihood of a conviction if the case proceeds to trial so that the defendant can make a meaningful decision as to whether or not to plead guilty.' " *Estes*, 188 Wn.2d at 464 (quoting *A.N.J.*, 168 Wn.2d at 111-12).

For ineffective assistance of counsel, prejudice exists if there is a reasonable probability that, except for counsel's deficient performance, the result of the proceeding would have been different. *Vazquez*, 198 Wn.2d at 248. In the context of plea negotiations, to establish prejudice "the 'defendant must show that the outcome of the plea process would have been different with competent advice.' " *State v. Drath*, 7 Wn. App. 2d 255, 267, 431 P.3d 1098 (2018) (quoting *Lafler v. Cooper*, 566 U.S. 156, 163, 132 S. Ct. 1376, 182 L. Ed. 2d 398 (2012)). The question is whether there is a reasonable probability that the defendant "would have negotiated a different outcome" if defense counsel's performance had not been deficient. *Estes*, 188 Wn.2d at 466. However, "[u]ncertainty about the outcome of plea bargain negotiations should not prevent reversal where confidence in the outcome is undermined." *Id.* at 464.

A petitioner who successfully demonstrates prejudice in an ineffective assistance of counsel claim necessarily has shown actual and substantial prejudice sufficient to obtain collateral relief. *State v. K.A.B.*, 14 Wn. App. 2d 677, 707-08, 475 P.3d 216 (2020).

The ultimate question of whether facts found by the trial court constitute ineffective assistance of counsel is a mixed question of law and fact that we review de novo. *In re Pers. Restraint of Brett*, 142 Wn.2d 868, 873-74, 16 P.3d 601 (2001).

B.     FAILURE TO ISSUE CONCLUSIONS OF LAW

The superior court's findings of fact do not contain conclusions of law. When this court remanded Wilks's PRP for a reference hearing, the court directed the superior court to issue a "determination on the merits" and enter conclusions of law in addition to holding an evidentiary hearing. *Wilks*, No. 55357-1-II, slip op. at 17. Therefore, the superior court was expected to hold an evidentiary hearing to determine the factual issue of whether Wilks's defense counsel informed him of potential sentencing consequences, and to grant or deny the relief Wilks sought.

The superior court's findings of fact technically do not decide the legal merits of Wilks's PRP through conclusions of law. Findings of fact 24 through 26 appear to decide the facts essential to Wilks's ineffective assistance of counsel claim. But the court's findings do not expressly deny the portion of Wilks's PRP remanded to the superior court. Therefore, we independently determine the merits of Wilks's PRP in light of the superior court's factual findings.

C.     REVIEW OF FACTUAL FINDINGS[3]

Wilks argues that substantial evidence does not support findings of fact 9, 11, 23, 24, and 25. We conclude that substantial evidence supports the relevant findings of fact.

---

[3] Wilks argues, and the State concedes, that findings of fact 1 and 2 contain errors. Finding of fact 1 states that the prosecution originally charged Wilks with three counts of unlawful delivery of a controlled substance to a minor when Wilks originally was charged only with two counts of this crime. The information later was amended to include three counts of unlawful delivery of a controlled substance to a minor, for which the jury convicted Healy. Finding of fact 2 states that Wilks paid Healy $6,500 when Wilks actually paid Healy $7,500. We accept the State's concession. But these errors are irrelevant to our analysis of Wilks's constitutional claim.

### 1. Legal Principles

In a reference hearing, a personal restraint petitioner has the burden of proving their claims by a preponderance of the evidence. *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 679, 101 P.3d 1 (2004). Preponderance of the evidence is equivalent to the "more likely than not" standard. *In re Pers. Restraint of Gentry*, 137 Wn.2d 378, 409, 972 P.2d 1250 (1999).

We review challenged factual findings from a reference hearing to determine whether the findings are supported by substantial evidence. *In re Pers. Restraint of Reyes*, 21 Wn. App. 2d 353, 374, 505 P.3d 1234 (2022). " 'Substantial evidence exists when the record contains evidence of sufficient quantity to persuade a fair-minded, rational person that the declared premise is true.' " *Id.* (quoting *Gentry*, 137 Wn.2d at 410). When substantial evidence supports the trial court's findings of fact, we will not disturb those findings even if there is conflicting evidence. *Reyes*, 21 Wn. App. 2d at 374. And the trial court's determination of witness credibility cannot be reviewed on appeal. *Id.*

If conclusions of law are mischaracterized as findings of fact, we analyze them as conclusions of law based on a de novo standard. *State v. Johnson*, 156 Wn. App. 82, 89, 231 P.3d 22 (2010).

### 2. Scope of Reference Hearing

The parties and the superior court seem to have misunderstood the scope of the reference hearing. This court remanded for the superior court to determine a single issue: "whether Wilks' defense counsel failed to advise him of sentencing consequences during plea negotiations, including the possibility of consecutive sentences, sentencing enhancements, and exceptional sentences." *Wilks,* No. 55357-1-II, slip op. at 24.

Much of the testimony and some of the findings of fact had minimal relevance to this single issue. For example, whether Wilks was informed of the settlement offer was not in dispute on remand. This court in its prior opinion specifically held that Wilks was informed of the plea offer and expressly rejected Wilks's claim based on the lack of communication of the offer.

3. Finding of Fact 9

In finding of fact 9 the trial court found,

Mr. Wilks subsequently *moved pro-se for contempt sanctions against Mr. Healy*, due to his designation of the case to an associated attorney Mr. John Cyr. Filings were made on 4/28/16, 4/29/16. A ruling was issued on 5/6/16 that Mr. Healy would be required to be the attorney handling the subsequent trial.

CP at 123 (emphasis added). Wilks argues that he did not initiate contempt proceedings; the trial court did.

The record does not show that Wilks moved for contempt himself. The trial court's filings in Wilks's original matter appear to reflect that the court ordered Healy to show cause in response to Cyr's appearance. Therefore, substantial evidence does not support the finding that Wilks moved pro se for contempt sanctions. But whether Wilks moved pro se for contempt sanctions is irrelevant to whether Healy adequately communicated potential sentencing consequences to him.

Substantial evidence supports the remainder of the finding. Healy acknowledged that Cyr appeared on Wilks's behalf instead of Healy. And the various dates of rulings and hearings are accurately reflected in the record. The trial court ordered Healy personally to represent Wilks at trial.

4. Finding of Fact 11

In finding of fact 11 the trial court found,

> At the re-arraignment hearing it was placed on the record that the determinative offer that had been extended by the prosecutor, Mr. John Cummings, was being withdrawn *and that the new charges carried the potential for consecutive and exceptional sentenced [sic] upward.*

CP at 84-85 (emphasis added). Wilks argues that although the prosecutor said at the hearing that Wilks could go to prison for life, there was no reference to a consecutive or exceptional sentence.

Wilks is correct. There was no discussion of consecutive or exceptional sentences *at the re-arraignment hearing*. However, the superior court made a separate finding – discussed below – that Wilks was informed that he was facing consecutive and exceptional sentences. Healy expressly testified that he talked to Wilks about an exceptional sentence and the possibility of consecutive sentences. Therefore, whether exceptional and consecutive sentences were discussed at the re-arraignment hearing is immaterial.

Substantial evidence does support the finding that it was placed on the record that a determinative offer had been extended by the prosecutor and was being withdrawn. And our prior opinion on Wilks's PRP found it unpersuasive that Wilks was not aware of the existence of an offer due to his presence at the re-arraignment hearing and Healy's representations to the trial court.

### 5. Finding of Fact 23

In finding of fact 23 the trial court found:

> The Court further finds a strong implication exists from the evidence and testimony presented by both Mr. and Mrs. Wilks, that Mr. Healy was attempting to resolve the case by way of a plea rather than try the case without the payment of trial fees.

CP at 86. Wilks argues neither his nor his wife's testimony support this finding.

Both Wilks and his wife testified that Wilks submitted to polygraph examinations for the purpose of plea negotiations. This testimony supports an inference that Healy was attempting to resolve the case through a plea. And the finding refers to evidence and testimony submitted by

Wilks, which includes Healy's testimony and exhibits. Healy was clear that he recommended that Wilks accept the plea offer. We conclude that substantial evidence supports this finding.

　　　　6.　　Findings of Fact 24-25

Wilks challenges findings of fact 24 and 25 collectively. The trial court's findings were:

> 24.　The Court finds based upon the totality of the evidence and testimony presented, that a clear and convincing standard is met that *the defendant was informed about the potential liabilities and implications if he were to be convicted at trial* and the defense failed to establish any reliable evidence that the offer was not meaningfully conveyed by defense counsel.
> 25.　The Court finds based upon the evidence and testimony presented, *the defendant was informed that he was facing consequences including up to life imprisonment and including exceptional and consecutive sentences*.

CP at 86 (emphasis added). Wilks argues that the testimony of himself, his wife, and Healy does not support these findings.

The key parts of these findings are that Wilks was informed about the potential implications of a conviction and that Wilks was informed that he was facing life in prison, including exceptional and consecutive sentences. Healy testified that he told Wilks that he was facing life in prison if convicted and that he talked to Wilks about an exceptional sentence and the possibility of consecutive sentences as well as enhancements. Wilks testified that he was not so informed. But the superior court weighed the evidence and concluded that Healy's testimony was more credible. We cannot weigh the credibility of witnesses. *Reyes*, 21 Wn. App. 2d at 374. Therefore, we conclude that substantial evidence supports findings of fact 24 and 25.

D.　　INEFFECTIVE ASSISTANCE OF COUNSEL

This court ruled that the issue for ineffective assistance of counsel was "whether Wilks' defense counsel failed to advise him of the sentencing consequences during plea negotiations, including the possibility of consecutive sentences, sentencing enhancements, and exceptional sentences." *Wilks,* No. 55357-1-II, slip op. at 24. The superior court expressly found that Wilks

17

was informed of exceptional and consecutive sentences and we hold above that substantial evidence supported that finding.

Wilks argues that the superior court never found that Wilks was advised of potential sentence enhancements, which was distinct from the potential for an exceptional sentence or consecutive sentences. However, the superior court found that Wilks was "informed about the potential liabilities and implications if he were to be convicted at trial." CP at 86. We hold above that substantial evidence supports that finding. Sentence enhancements would be one of the liabilities and implications, and Healy expressly testified that he informed Wilks about enhancements.

Accordingly, we hold that based on the superior court's findings, Wilks's defense counsel did not perform deficiently because in the words of this court in its prior opinion, he "advise[d] [Wilks] of the sentencing consequences during plea negotiations, including the possibility of consecutive sentences, sentencing enhancements, and exceptional sentences." *Wilks,* No. 55357-1-II, slip op. at 24. Therefore, Wilks's ineffective assistance of counsel claim fails.

E.      SUPERIOR COURT QUESTIONING

Wilks argues that the trial court's questioning of Wilks showed that the court abdicated its role as a neutral arbiter and advocated for the State, thereby violating his right to due process. We disagree.

1.      Legal Principles

The Fourteenth Amendment to the United States Constitution and article I, section 3 of the Washington Constitution prohibit the deprivation of a liberty interest without due process of law. The right to a fair trial is a liberty protected by the federal and state constitutions. *Estelle v. Williams*, 425 U.S. 501, 503, 96 S. Ct. 1691, 48 L. Ed. 2d 126 (1976); *State v. Davis*, 141 Wn.2d

18

798, 824, 10 P.3d 977 (2000). The due process clauses require a fair trial and tribunal. *State v. Moreno*, 147 Wn.2d 500, 506-07, 58 P.3d 265 (2002).

In general, a trial court does not violate the right to a fair trial by asking witnesses questions. *Id.* at 506-12. ER 614(b) grants courts the authority to interrogate witnesses and ask questions. But a trial court violates due process when it begins to advocate for a party. *See Moreno*, 147 Wn.2d at 509-11. A judge cannot "take charge of a party's case or . . . become a clear partisan." 5A KARL B. TEGLAND & ELIZABETH TURNER, WASHINGTON PRACTICE: EVIDENCE § 614.5 (6th ed.) (2024).

We look to the proceedings as a whole to determine whether a court's questions violate due process. *See Moreno*, 147 Wn.2d at 507-12. We look to several factors, including the frequency and nature of the questions, whether the court waited until after counsel questioned the witness, whether the court's questions were clarifying or adversarial, whether the court interjected in favor of one party, whether questioning was impassioned or accusatory, and whether the court usurped counsel's role. *See id.*; *United States v. Pena-Garcia*, 505 F.2d 964, 967 (9th Cir. 1974); *United States v. Saenz*, 134 F.3d 697, 702-05 (5th Cir. 1998); *United States v. Singer*, 710 F.2d 431, 436-37 (8th Cir. 1983); *United States v. Van Dyke*, 14 F.3d 415, 418-20 (8th Cir. 1994).

### 2. Analysis

Here, the superior court asked Wilks questions for approximately 10 pages of the hearing our of approximately 80 pages. The court asked questions after both parties had the opportunity to elicit facts from Wilks on direct and cross examination. The court was the ultimate fact-finder and it wanted to follow up on some of the case issues. In this context, we do not believe that the number of the court's questions was inappropriate.

In addition, the nature of the superior court's questions was clarifying, not attacking. Many of these questions expounded on or asked for more detail than the questions asked by counsel. None of the questions were impassioned or accusatory; they were direct and specific to the inquiry before the court. The court asked specific questions that allowed Wilks an opportunity to state his positions. Therefore, none of the factors support finding that the trial court violated Wilks's due process rights through its questions.

Wilks also argues that the superior court developed theories for the State during his questions that the prosecutor had not touched on during cross-examination. But again, the court was trying to determine the facts in its role as the fact-finder. The court did not state how the parties argued those facts.

Wilks argues that the unpublished case *In re Dependency of BWK*, No. 76675-9-I (Wash. Ct. App. Oct. 29, 2018) (unpublished), https://www.courts.wa.gov/opinions/pdf/766759.pdf, supports his claim that his due process rights were violated.[4]  In that case, the trial court presided over a six day bench trial to determine a child's dependency. *Id.* at 2. The trial court asked every witness questions. *Id.* Over the course of the trial, the court asked over 800 questions. *Id.* Among these questions included statements such as "I'll tell you bluntly, okay, I don't believe you." *Id.* at 27. This court held that the trial court engaged in manifest constitutional error because of the trial court's skepticism, hostility, and argumentative questioning. *Id.* at 11. The court held that the aggressive questioning, challenging the credibility of witnesses, and helping elicit favorable evidence on behalf of the State foreclosed the mother's ability to elicit her own favorable testimony, and remanded the case of a new trial. *Id.* at 27-28.

---

[4] Unpublished cases carry no precedential value and are only persuasive authority. GR 14.1(a). We discuss this case because Wilks's due process argument depends on analogizing to *BWK*.

*BWK* is distinguishable. Unlike the extreme behavior of the trial court in *BWK*, the superior court here asked questions initially developed by both the State and Wilks. The trial court's questions in this case were clarifying and not argumentative, and sought to elaborate on questions asked by both Wilks and the State.

Wilks also argues that the superior court's questions injected actual bias into its findings of fact that violate the right to a fair trial. Because we conclude that the judge's questions did not violate the right to a fair trial, we reject the argument that the findings of fact violate due process.

F.      APPEARANCE OF FAIRNESS DOCTRINE

Wilks argues that the trial court violated the appearance of fairness doctrine. Under RAP 2.5(a), we may refuse to review a claim of error not raised in the superior court. The appearance of fairness doctrine is not a constitutional rule and is waived on appeal when not raised in the superior court. *See State v. Tolias*, 135 Wn.2d 133, 140, 954 P.2d 907 (1998). Wilks did not raise the appearance of fairness doctrine during the reference hearing. Therefore, Wilks waived his appearance of fairness doctrine argument.

Accordingly, we hold that the superior court did not violate Wilks's due process rights when it asked Wilks questions during the reference hearing.

CONCLUSION

We deny the remainder of Wilks's PRP.

No. 58671-1-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
MAXA, J.

We concur:

_____
CRUSER, C.J.

_____
GLASGOW, J.